**UNITED STATES of America, Plaintiff,**

**State of Alabama, ex rel. Charles A. Graddick, Attorney General, and the Alabama Department of Environmental Management, Intervening Plaintiffs,**

v.

**ILCO, INC., a/k/a Interstate Lead Company, Inc.; Leeds Excavating & Paving Co., Inc.; Diego Maffei; William Fleming and Annie Bell Fleming; Defendants.**

**In re ILCO, INC., Debtor.**

No. CV85–H–823–S.
Bankruptcy No. BK–82–04836–S.

United States District Court,
N.D. Alabama, S.D.

May 10, 1985.

**1018**

Frank W. Donaldson, U.S. Atty., George C. Batcheler, Asst. U.S. Atty., Birmingham, Ala., F. Henry Habicht II, Asst. Atty. Gen., Scott C. Fulton, Environmental Enforcement Section, Land and Natural Resources Div., U.S. Dept. of Justice, Douglas Greenhaus, U.S. E.P.A., Washington, D.C., Keith Casto, Region IV, U.S. E.P.A., Atlanta, Ga., for plaintiff.

Donald B. Sweeney, Jr., Rives & Peterson, Birmingham, Ala., for Leeds Excavating & Paving Co.

James E. Hill, Jr., Leeds, Ala., for William & Annie Bell Fleming.

Jack E. Held/Charles R. Driggars, Sirote Permutt Friend Friedman Held Apolinsk, Birmingham, Ala., for ILCO, Inc., and Maffei.

Charles A. Graddick, Atty. Gen., David A. Ludder, Asst. Atty. Gen., Ala. Dept. of Environmental Management Office of Gen. Counsel, Montgomery, Ala., for Non-parties, State of Ala. and the Ala. Dept. of Environmental Management, Proposed plaintiff intevenors.

## ORDER

HANCOCK, District Judge.

On March 18, 1985, plaintiff United States of America (U.S.) filed a complaint against: (1) ILCO, Inc., a/k/a Interstate Lead Company, Inc. (ILCO)—the owner and operator of a secondary lead smelting and lead battery recycling facility in Leeds, Alabama, and also is the debtor in an ongoing Chapter 11 bankruptcy proceeding styled *In Re ILCO, Inc.*, BK–82–04836–S, which proceeding was commenced in the bankruptcy court for this court on August 20, 1982; (2) Diego Maffei (Maffei)—the president and chief operating officer of ILCO; (3) William and Annie Bell Fleming (Flemings)—the owners of the property referred to as the Fleming's Patio site, which serves as one of ILCO's off-site disposal grounds; and (4) Leeds Excavating and Paving Company, Inc., (Leeds)—the transporter of ILCO's "hazardous" wastes to two off-site disposal grounds, the Fleming's Patio site and a site referred to as the Church of God site.

The first three claims of the complaint seek prohibitory injunctive relief against ILCO and Maffei relating to regulatory violations of the Clean Water Act (CWA) and the Resource Conservation and Recovery Act (RCRA). In summary, the First Claim alleges that defendants ILCO and Maffei have violated the CWA by discharging lead-contaminated wastewater (a) since March, 1984, without a valid National Pollutant Discharge Elimination System (NPDES) permit, (b) at locations not approved of in an earlier issued but now expired permit, (c) with contamination levels above the expired permit's approved levels, and (d) in violation of the expired federal permit's reporting requirements. Under 33 U.S.C. § 1319(a)(3), the U.S. seeks to enjoin Maffei and ILCO from continuing to discharge pollutants into the water unless and until these defendants obtain a valid NPDES permit. The Second Claim and Third Claim allege that defendants ILCO and Maffei have violated provisions of the RCRA by: (a) failing to identify certain waste activities and units in ILCO's November 19, 1980 application seeking qualification as an "interim status" hazardous waste facility, and by maintaining and operating those unidentified units without a permit; (b) violating both state and federal interim status regulations regarding activities which were conducted pursuant to a permit;[1] and (c) releasing

---

1. From November, 1980 through February 24, 1981, ILCO operated as an interim status hazardous waste facility subject to federal regulations. From February 25, 1981 through July, 1984, the federal government authorized the State of Alabama to operate a state hazardous waste program in lieu of the federal program; thus the interim status regulations that ILCO

hazardous wastes into the environment at the ILCO site. The U.S. apparently discovered most of these RCRA violations as a result of several site inspections conducted at various times in 1983, 1984 and 1985. The U.S. explains that it did not inspect the ILCO facility at earlier dates because ILCO notified state authorities that it had shut down operations at the ILCO plant in February of 1981, and never notified the state that it had resumed operations. Pursuant to 42 U.S.C. § 6928(a) (Second Claim) and § 6928(h) (Third Claim), the U.S. seeks to enjoin Maffei and ILCO from continuing to commit the three RCRA violations listed above.

The Fourth Claim and Fifth Claim of the complaint seek mandatory injunctive relief pursuant to provisions of the RCRA and Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). These claims focus on the EPA's determination that the Fleming's Patio site and the ILCO site may present an imminent and substantial endangerment to public health and the environment. Under 42 U.S.C. § 6973 (Fourth Claim) and § 9606 (Fifth Claim), the U.S. seeks an order requiring (a) Maffei and ILCO to remedy the dangerous conditions at both sites pursuant to RCRA (Fourth Claim) and CERCLA (Fifth Claim), (b) defendants Flemings and Leeds to remedy the dangerous conditions at the Fleming's Patio site pursuant to RCRA (Fourth Claim), and (c) the Flemings to remedy the dangerous conditions at the Fleming's Patio site pursuant to CERCLA (Fifth Claim).

Proceeding under 42 U.S.C. § 9607(a), the Sixth Claim seeks money damages from Maffei pursuant to CERCLA, for costs incurred by the U.S. in cleaning up the Church of God site.

Along with the complaint, the U.S. filed a motion for a preliminary injunction and a "Motion for Referral to a United States District Judge." On that same day, March 18, 1985, the State of Alabama and the

Alabama Department of Environmental Management filed both a motion to intervene as plaintiffs and a proposed intervenor's complaint, in which the proposed intervenors accuse Maffei and ILCO of maintaining a continuing public nuisance and of violating the Federal Water Pollution Control Act (FWPCA), the Alabama Water Pollution Control Act (AWPCA), the RCRA, and the State's Hazardous Wastes Management Act of 1978 (HWMA). The proposed intervenor's complaint seeks injunctive relief and seeks assessment of civil penalties.

Prior to ruling on the State's motion and setting this case for a preliminary injunction hearing, this court issued an order dated March 22, 1985, notifying the parties and proposed intervenors that it would treat the U.S.'s "Motion for Referral to a United States District Judge" as a motion under 28 U.S.C. § 157(d) for withdrawal of a reference to bankruptcy court and directing the parties to submit briefs addressing the following issues:

> (1) What aspect, if any, of the March 18, 1985 complaint is presently referred to the bankruptcy court as a result of the General Order of Reference entered in this court July 16, 1984, (2) what aspect, if any, of the March 18, 1985 complaint which arguably is referred to the bankruptcy court should this court withdraw under § 157(d), and (3) the effect, if any, of the § 362 stay on the respective parties and issues embodied in the complaint?

On April 30, 1985, the State was granted leave to file a brief addressing the bankruptcy issues identified in the March 22, 1985 order. All briefs have been received and the matters raised by the pending motions and by the March 22, 1985 order are ripe for resolution.

*I. Impact of the general order of reference*

Under the 1984 Bankruptcy Amendments the federal district court has original but

---

and Maffei allegedly violated during this time period were federally enforceable state regulations. Any violations by defendants occurring

after August 1, 1984, are considered violations of federal as opposed to state regulations.

not exclusive jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. Pursuant to 28 U.S.C. § 157(a), a federal district court judge has discretion to refer to the bankruptcy judge "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." On July 16, 1984, The United States District Court for the Northern District of Alabama issued a general order of reference automatically referring to the bankruptcy judges for the district "all cases under title 11 and all proceedings arising under title 11 or arising in or *related to a case under title 11.*" (emphasis added).

The Bankruptcy Code does not define "related to" nor does it provide any guidance as to what types of actions are considered "related to" a case under title 11. The U.S. and ILCO now agree that this case is a related proceeding subject to the general reference solely because ILCO, a named defendant in the instant litigation, is a debtor in an ongoing Chapter 11 reorganization. The State, however, contends that a case is not subject to the automatic reference unless the outcome of that case directly affects the bankruptcy proceeding. Under the State's rationale, the relief sought by it and the U.S. will not directly affect ILCO's bankruptcy case—only an attempt to enforce a judgment would affect the bankruptcy case.

■ The Chapter 11 reorganization of debtor ILCO could, and most likely will be greatly affected by a grant or denial of the injunctive relief sought by the U.S. in this case. As a result, this case certainly relates to that title 11 case. Broad construction of the phrase "related to" is consistent with Congressional intent because of the withdrawal provision. Any inequities in a broad construction can be corrected by the permissive withdrawal provisions of 28 U.S.C. § 157(d). Consequently, this court concludes that this entire case, at the time of its filing, was subject to automatic reference and was in fact referred by the July 16, 1984 order to the bankruptcy judges,

thereby becoming an adversary proceeding in the title 11 case.

## II. Withdrawal from the bankruptcy judge

■ 28 U.S.C. § 157(d) provides:
The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

The U.S. asserts that this court is required to withdraw this entire case from the bankruptcy judge pursuant to the second sentence of § 157(d). ILCO contends that this action should be characterized as a "core proceeding" and therefore, is not subject to the provisions in § 157(d). ILCO's argument is without merit. The withdrawal provisions of § 157(d) make no distinction between core and non-core proceedings, and encompass proceedings that are core matters as well as those that are not core matters. 1 *Collier on Bankruptcy* ¶ 3.01 at 3-41 (15th Ed.1985), *In Re White Motor Corp.*, 42 B.R. 693, 701 (D.C.1984). Indeed, the permissive withdrawal provision expressly authorizes withdrawal of the entire bankruptcy "case." Nothing could be more "core" than that.

Section 157(d) mandates a withdrawal of the reference of a proceeding to a bankruptcy judge if its resolution requires "consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." Comments made during the Congressional debates concerning § 157(d) indicate that the extremely broad phrase, "laws regulating organizations or activities affecting interstate commerce," is to be construed narrowly. One commentator posits that in mandating withdrawal in proceedings involving the field of interstate

commerce activity, Congress must have considered that district judges generally are more familiar with laws regulating activities affecting interstate commerce, such as labor laws or securities laws, because the district courts deal with them on a daily basis. 1 *Collier on Bankruptcy* ¶ 3.01 at 3–41. If Collier's view of Congressional intent is correct, then the instant litigation involving our national environmental laws qualifies as a candidate for the mandatory withdrawal provision of § 157(d).

*White Motor Corp., supra,* is instructive on the interpretation and application of the mandatory withdrawal provision. In *White Motor Corp.,* PBGC, who was in charge of administering White Motor's termination insurance plan pursuant to ERISA, filed fifteen proofs of claim with the bankruptcy court. White Motor allegedly owed money to the plan to satisfy the minimum funding requirements under ERISA. Upon filing these claims, PBGC classified some of the claims as administrative expenses and others as high priority claims. Only a few were purported to be unsecured claims. The trustee of White Motor's estate objected to PBGC's classification of these claims. The dispute was set for an evidentiary hearing in the bankruptcy court. Before the date of the hearing, however, the 1984 Bankruptcy Amendments were enacted. Pursuant to § 157(d) of the new amendments, PBGC requested the district court to withdraw the dispute over the classification of the claims from the bankruptcy judge.

In this case of first impression, District Court Judge Aldrich thoroughly analyzed the legislative history of the mandatory withdrawal provision and correctly concluded that the provision did not apply simply whenever non-bankruptcy statutes were considered. Consideration of the federal "interstate" laws had to require more than a *de minimus* consideration to invoke the mandatory withdrawal provision. Judge Aldrich noted Congress's caution that § 157(d) not become "an escape hatch through which most bankruptcy matters will be removed to the district court." *White Motor Corp.,* 42 B.R. at 704. With this admonition in mind, Judge Aldrich concluded that the mandatory provision applied *only* if the district court could make an *affirmative determination* that resolution of the dispute required *substantial* and *material* consideration of those non-bankruptcy statutes.

After examining each of PBGC's alleged ERISA and related tax questions, Judge Aldrich found that the only statutes that had to be examined and applied to determine the classification of PBGC's claims were sections 503 and 507 of the Bankruptcy Code. The court concluded:

> [f]or this Court to grant the motion to withdraw reference based on *speculation* about ERISA and IRC issues *which may or may not arise and may or may not be germane* to resolution of core Code proceedings would be inconsistent with the purposes underlying the very existence of the Bankruptcy Court and would encourage forum shopping in a manner Congress disdained when it sought to avoid "creating a multiplicity of forums for the adjudication of part of a bankruptcy case."

*Id.* at 705 (emphasis added).

■ This court agrees with Judge Aldrich's philosophy. It would thwart Congress's intent to automatically withdraw the reference in this case solely on the ground that it involves in one way or another federal environmental laws. Clearly, the CWA, RCRA and CERCLA are rooted in the commerce clause and are the type of laws Congress had in mind when it enacted the mandatory withdrawal provision. But that provision will mandate withdrawal of this case *only* if this court can make an affirmative determination that resolution of the U.S.'s complaint will require *substantial* and *material* consideration of the CWA, RCRA, CERCLA and the federal regulations issued thereunder. This court is convinced that these federal statutes are not merely incidental to that resolution of the complaint, but rather are essential to the resolution. Without a substantial and material consideration of these statutes,

the federal government has no case against defendants. A determination of whether injunctive relief is available under CWA, RCRA and CERCLA admittedly requires in this case a construction of applicable state environmental laws. If only state regulations applied, ILCO would have a strong argument that the mandatory provision did not apply. This case, however, also requires a detailed examination of explicit federal regulations and federal permit requirements. This case is distinguishable from *White Motor Corp.*, which required primarily an interpretation of bankruptcy laws. Congress intended for cases such as the instant case to be resolved by a district court judge.

Even if the mandatory provision did not apply, this court would exercise its discretion under the permissive withdrawal provision of § 157(d) and withdraw the reference. The instant litigation most likely is not a core proceeding as described by 28 U.S.C. § 157(b)(2). Thus, if a bankruptcy judge were to conduct this litigation, he could not enter a final judgment unless the parties consented. A district judge would also have to take the time necessary to become familiar with the case before adopting the proposed findings and conclusions of the bankruptcy judge. Moreover, if a party objects to proposals of the bankruptcy judge, the district judge will be required to review the matter *de novo*. *See* 28 U.S.C. § 157(c)(1). Because the U.S. alleges that the disposal sites, as they exist today, present an imminent and substantial endangerment to the public health and environment, this case should not be unnecessarily delayed by requiring the U.S. to convince a bankruptcy judge, and then, maybe in a *de novo* proceeding, a district judge that the public's health is endangered. Clearly, this is the classic case where the discretionary withdrawal provision in § 157(d) should be invoked.

### III. Application of the automatic stay

Sections 362(a)(1) and (2) of title 11 of the United States Code provide that the filing of a petition in bankruptcy operates as a stay of:

> (1) the *commencement* or continuation, including the issuance or employment of process, *of a judicial*, administrative, or other *proceeding against the debtor that* was or *could have been commenced before the commencement of the case under this title*, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title....
>
> (emphasis added)

The U.S. contends that the claims in the complaint against ILCO all arose after ILCO filed its petition for reorganization on August 20, 1982 and that the automatic stay therefore does not apply. ILCO contends the § 362 stay does apply because this case involves distinctly pre-petition conduct on which an action could have been commenced prior to the filing in the bankruptcy court. As a basis for this argument, ILCO points to several alleged violations which existed prior to 1982. The U.S. responds that because ILCO failed to notify authorities that it had resumed operations after its alleged shutdown in February of 1981, the U.S. was unable to discover ILCO's violations until after the filing in bankruptcy. The inspections of the sites, which revealed ILCO's unlawful hazardous waste practices, and the subsequent sampling, which demonstrated the magnitude of the hazards attributable to these practices, occurred post-petition. The court need not resolve whether this case falls within the ambit of the above quoted portion of § 362, and will assume such to be the case. But, for the reason outlined below, this case is excepted from the automatic stay under § 362(b)(4) and (5).

Congress's purpose in enacting the automatic stay provision was to grant immediate relief to the debtor from creditors and also to prevent dissipation of the debtor's assets before an orderly distribution to creditors could be arranged. Thus, much weight is to be placed on the value of

preserving the debtor's estate. Nonetheless, Congress did recognize that in some circumstances bankruptcy policies were to yield to higher priorities. Section 362(b) lists the exceptions to the § 362(a) automatic stay and includes:

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power....

The purpose of these exceptions is explained in the legislative history of the Code:

Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. *Thus, where a government unit is suing a debtor to prevent or stop violation of* fraud, *environmental protection,* consumer protection, safety, or similar police or regulatory laws, *or attempting to fix damages for violation of such law,* the action or proceeding is not stayed under the automatic stay.

S.Rep. No. 95–989 at 52, 1978 U.S.Code Cong. & Ad.News at 5787, 5838; H.Rep. No. 95–595 at 343, 1978 U.S.Code Cong. & Ad.News at 6299 (emphasis added).

Paragraph (5) makes clear that the exception extends to *permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment,* but does not extend to permit enforcement of a money judgment. Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a government unit of a money judgment would give it preferential treatment to the detriment of all other creditors.

S.Rep. No. 95–989 at 52, 1978 U.S.Code Cong. & Ad.News at 5787, 5838; H.Rep. No. 95–595 at 343, 1978 U.S.Code Cong. & Ad.News at 6299 (emphasis added). Both the U.S. and ILCO agree that the language of § 362(b)(4) excuses this case from the § 362(a) stay. ILCO contends, however, that § 362(b)(5) contains an exception to the (b)(4) exception—that since the plaintiff's complaint seeks mandatory injunctive relief, any resulting injunction ordering ILCO to abate the release of hazardous substances and to abate the imminent and substantial endangerment to health and the environment is in fact an attempt to obtain and enforce a money judgment, and therefore, is subject to a stay.

Admittedly, if plaintiff's motion for preliminary injunction is granted and if the permanent injunction is ultimately issued, ILCO, as well as other defendants, will be forced to spend money to clean up the hazardous waste sites. Obviously, this will deplete ILCO's assets to the detriment of other creditors. Congress indicated in § 362(b), however, that preserving the debtor's estate was not always the dominant goal. The legislative history cited above indicates that the enforcement of an injunction ordering compliance with environmental laws is more important than the debtor's right to have a breathing spell from its creditors or than the creditors' rights to an orderly administration of the estate. Furthermore, if courts were to find, as ILCO contends, that an order which requires the expenditure of money is a "money judgment," then "the exception to section 362 for government police [and regulatory] action, which should be construed broadly, would instead be narrowed into virtual nonexistence.... [A]lmost everything costs something. An injunction which does not compel some expenditure or loss of monies may often be an effective nullity." *Penn Terra Ltd. v. Dept. of Environmental Resources,* 733 F.2d 267, 277–78 (3d Cir.1984).

In a case involving similar facts and the effect of the § 362(b)(4) and (5) exceptions, the Third Circuit proposed that

the proper approach for a court to determine whether an injunction is an equitable remedy, or in application, a money judgment, is to focus on the "nature of the injuries which the challenged remedy is intended to redress—including whether plaintiff seeks compensation for past damages or prevention of future harm...." *Penn Terra*, 733 F.2d at 278. This court agrees with the Third Circuit's approach, as have several other courts. See *In re Laurinburg Oil Company, Inc.*, 49 B.R. 652 (Bankr.M.D.N.C.1984); *Matter of Williston Oil Corp.*, No. 83–04116, (D.N.J. Sept. 26, 1984). See also *Ohio v. Kovacs* — U.S. ——, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985), in which the Supreme Court, in distinguishing *Penn Terra*, apparently approved the Third Circuit's conclusion that an injunction against a bankrupt requiring compliance with the environmental laws in order to prevent future harm is not a suit to enforce a money judgment, and therefore is not subject to the § 362 stay. *Id.* at 711 n. 11. The U.S. in this case seeks a remedy that will protect this state's citizens from potential *future* harm—the relief sought against ILCO is not being pursued to compensate for past wrongful acts which have already resulted in injuries. This court concludes that the complaint filed by the U.S., which seeks a court order compelling ILCO as well as other named defendants to remedy environmental hazards, constitutes an equitable action to prevent future harm, rather than an action to enforce a money judgment. The automatic stay provisions of 11 U.S.C. § 362 are therefore inapplicable.

## IV. *Intervenor's complaint*

The State of Alabama and the Alabama Department of Environmental Management's motion for leave to intervene in this action for the purpose of joining the U.S. in the prosecution of its claim against defendants ILCO and Maffei is GRANTED. The automatic stay does not apply to the State's claim seeking injunctive relief for the same reasons the stay does not apply to the U.S.'s claims. The State, however, also seeks to assess civil penalties against ILCO. The State's argument that the automatic stay does apply to the *enforcement* of a judgment for civil penalties, but does not apply to the entry of a judgment fixing liability for civil penalties is correct. Since the State is pursuing the latter action, the automatic stay does not apply.

## V. *ILCO and Maffei's motion to add party plaintiff*

On April 19, 1985, defendants ILCO and Maffei filed a motion pursuant to FRCP Rules 19 and 20 to add as party plaintiff the Jefferson County Department of Health on the grounds that this department is subject to service of process and that in the absence of joinder, inconsistent burdens and obligations may be imposed upon ILCO and Maffei. On April 29, 1985, the State filed its objection on the grounds that the Department of Health is interested solely in air pollution problems associated with ILCO, and thus, the Department has no interest relating to the subject matter of the pending action. The State's response is correct and therefore, the motion of ILCO and Maffei to add Jefferson County Department of Health as a party plaintiff is DENIED.

## VI. *Hearing for preliminary injunction*

The U.S.'s motion for preliminary injunction is set for a hearing on Tuesday, June 11, 1985 at 9:00 A.M.