In re ANTHONY TAMMARO, INC., Debtor.

John R. BLOCK, Secretary, United States Department of Agriculture, Plaintiff,

v.

ANTHONY TAMMARO, INC., Defendant.

No. Misc. 85–312.

United States District Court, D. New Jersey, Civil Division.

Jan. 16, 1986.

U.S. Dept. of Justice by Edward Silverstein, Office of General Counsel, Washington, D.C., Paul Blaine, Asst. U.S. Atty., Trenton, N.J., for plaintiff.

Schachter, Cohn, Trombadore & Offen, P.C. by John Bracaglia, Somerville, N.J., for defendant.

## OPINION

BARRY, District Judge.

On March 15, 1985, Anthony Tammaro, Inc. ("Tammaro") filed a voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code. 11 U.S.C. § 1101 *et seq.* That routine legal act has given rise to complex questions concerning the proper jurisdictional reach of judges of the United States Bankruptcy Court and of the United States District Court. As a result, this court is now required to enter the jurisdictional maze created by Congress through the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("the 1984 Act"), Pub.L. No. 98–353, 98 Stat. 333 (1984) (codified as amended in scattered sections of 28 U.S.C. and 11 U.S.C.) Most particularly, this court is called upon to address one question: whether and when a district court must withdraw a reference to the bankruptcy court and whether, under the circumstances of this case, the reference must be withdrawn.

Tammaro is a wholesaler of produce. It filed a bankruptcy petition on March 15, 1985, listing total assets of $830,822.00 and a total debt of $1,091,407.20. Included on Tammaro's list of unsecured creditors are nine suppliers of produce owed amounts ranging from $65.00 to over $50,000 and totalling $144,195.18 or slightly more than 13% of Tammaro's total debt.

The Perishable Agricultural Commodities Act, 7 U.S.C.A. § 499e(c) (Supp.1985) ("PACA"), as amended by Congress in 1984, creates a constructive trust for the benefit of unpaid sellers of produce, a trust which exists until full payment has been received. § 499e(c)(4)(ii) authorizes the Secretary of Agriculture to bring an adversary proceeding to prevent and restrain

dissipation of funds subject to the trust. The Secretary filed such an action in bankruptcy court asserting a total claim of $79,102.70 on behalf of Tammaro's nine supplier-creditors.[1]

Upon filing the adversary proceeding in bankruptcy court, the Secretary moved in district court for mandatory withdrawal of the PACA claim to the district court pursuant to 28 U.S.C.A. § 157(d) (Supp.1985). Section 157(d) states:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.[2]

In determining whether § 157(d) requires the withdrawal of this proceeding, the underlying PACA issues need only be addressed to the extent they impact on the withdrawal motion.[3]

I write on what is virtually a clean slate as neither the Supreme Court of the United States nor the Court of Appeals for the Third Circuit has yet addressed the mandatory withdrawal provision of the 1984 Act. The few district courts which have addressed this provision have set forth standards and employed analyses with which, in varying degrees, I disagree.

A proper analysis of § 157(d) requires a brief review of the 1984 Act and the relevant case law. In 1978, Congress granted the bankruptcy courts jurisdiction over "all proceedings arising under title 11 or arising in or related cases to title 11". Pub.L. 95–598, 92 Stat. 2687 (repealed by Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, § 114 & § 121(d), 98 Stat. 333). In *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court's most recent discussion of the power of Congress in light of Article III of the Constitution to assign adjudicative authority to decision makers such as federal bankruptcy judges who are not Article III decision makers, this 1978 jurisdictional grant was held unconstitutional.

The precise question in *Marathon* was whether Article III permitted Congress to assign any essential attribute of the "judicial power" to a non-Article III federal decision maker when state law prescribed the rule of decision in a dispute between private parties, a question answered in the negative. While acknowledging that Article III courts are not required for the adjudication of all federal issues, the court was unwilling, in the context of the facts of *Marathon*, to permit Congress to bypass Article III by permitting non-Article III

---

**1.** Neither party has explained why the amounts listed in Tammaro's bankruptcy petition do not coincide with the amounts the Secretary claims are due under PACA. An explanation of that discrepancy is not necessary to the determination of the issue now before the court.

**2.** Pursuant to 28 U.S.C. § 1334(a), original and exclusive jurisdiction over all cases arising under the Bankruptcy Code is vested in the district courts. "Case" comprises the entire Chapter 7, 9, 11, or 13 case that is commenced by the filing of a petition. Disputes which arise during the pendency of a case are referred to in § 1334(b) as "proceedings", and there may be numerous proceedings within a case. King, *Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984*, 38 Vand.L.Rev. 675, 676–77 (1985). "Proceeding" and "claim" or "issue" will be used interchangeably within this opinion.

**3.** Although not presently at issue before the court, the Secretary seeks an eventual determination that the PACA trust funds are not part of the bankrupt estate and an order directing immediate payment of those funds to the supplier-creditors. Tammaro contends that to the extent PACA requires the creation of a trust, funds subject to that trust are merely priority claims within the bankrupt estate. Without pausing to consider the merits of the parties' positions on this issue, I note that 7 U.S.C.A. § 499e(c)(4)(i) only authorizes the Secretary to prevent dissipation of the trust funds. § 499e(c)(4)(i) authorizes the trust *beneficiaries*, none of which is presently a party to this action, to seek payment. This pleading defect does not affect the issue now before me and presumably will be corrected in an amended complaint.

judges to decide all cases, including those which merely related to bankruptcy proceedings, unless there was a "limiting principle". *Id.* at 73, 76, 102 S.Ct. at 2872, 2874. The court refused, as well, to view bankruptcy courts under the 1978 Act as mere adjuncts to the district courts. The use of adjuncts in factfinding and adjudicative roles is permissible but only if the district courts are able to maintain "sufficient control" over those adjuncts. *Id.* at 78–79, 102 S.Ct. at 2875. Thus, to pass constitutional muster, the adjuncts' functions must be restricted so as to retain the essential attributes of judicial power in an Article III court. *Id.* at 81, 102 S.Ct. at 2876–77.

The 1984 Act was the long awaited Congressional response to *Marathon.* Under the 1984 Act, district courts have original jurisdiction over all cases arising under Title 11. 28 U.S.C. § 1334. 28 U.S.C. § 157(a), however, provides that:

> Each district court may provide that any or all cases arising under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judge for the district.

Pursuant to this section, virtually all district courts have referred the bankruptcy cases within their districts to their respective bankruptcy courts. *See, e.g.,* Standing Order, In Re General Rules of the Court (D.N.J. July 23, 1984).

Section 157 divides cases heard by bankruptcy judges into core and non-core proceedings and defines the relationship between the bankruptcy and district courts. § 157(b)(1) establishes that:

> Bankruptcy judges may hear and determine all cases arising under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

§ 157(b)(2) consists of a non-inclusive list of core proceedings arising under Title 11 and specifies, among others, matters concerning the administration of the estate; allowance or disallowance of claims against the estate or exemptions from property of the estate; orders to turn over property of the estate; proceedings to determine, avoid, or recover preferences; motions to terminate, annul or modify the automatic stay; determinations as to the dischargeability of particular debts and the validity, extent, or priority of liens; and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security-holder relationship. § 158(a) makes clear that orders and judgments entered in core bankruptcy proceedings are subject to appeal to the district court.

§ 157(c)(1) deals with non-core proceedings. A non-core proceeding is defined as a "proceeding that is not a core proceeding but that is otherwise related to a case under title 11." Accordingly, unless otherwise consented to by the parties, *see* § 157(c)(2), the bankruptcy judge has no power to make determinations as to non-core proceedings but has power only to recommend and, thus, is acting as a mere adjunct to the district court:

> the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected. § 157(c)(1).

Under this jurisdictional framework, issues not at the core of the federal bankruptcy power are defined as non-core proceedings thus ensuring that those matters, if desired by the parties, will ultimately receive *de novo* review by an Article III court. The entire process, including the initial referral to the bankruptcy court, takes place under the total control and jurisdiction of the district court. *Cf. United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (Federal Magistrate's Act, 28 U.S.C. § 636).

Under § 157(d), district courts *may* withdraw either core or non-core proceedings

on their own motion or upon the motion of either party. § 157(d) also includes the mandatory withdrawal provision at issue in this case whereby certain issues *must* be heard by a district court. As discussed more fully below, this mandatory withdrawal provision, which had no counterpart in the 1978 Act, was not part of the Congressional response to the constitutional problems raised by *Marathon,* but merely represented a Congressional preference, as opposed to a constitutional requirement, that district courts hear certain cases involving both Title 11 and non-Code federal law. *See* King, *Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984,* 38 Vand.L.Rev. 675, 695–700 (1985).

The first case to interpret § 157(d) was *In Re White Motor Corporation,* 42 B.R. 693 (N.D.Ohio 1984). *White Motor,* the most frequently cited case on the issue of withdrawal, commenced its analysis by recognizing that Congress intended to "retain as much as possible of the bankruptcy court structure created by the 1978 Act, within the constitutional constraints spelled out in *Marathon."* *Id.* at 697. The court then proceeded to describe the heart of the 1984 Act, namely the creation of core and non-core proceedings, as codified at § 157(b) & (c). *Id.* at 698, 699. With reference to § 157(d), the *White Motor* court maintained that, in contrast to the view taken herein, it must be read as part of the Congressional solution to the constitutional problems raised in *Marathon. Id.* at 699–701.[4] In support of this contention, the court cited Senate Report No. 55, 98th Cong., 1st Sess. 16 (1983), which stated that "The district court thus retains [under the corresponding section to § 157(d)] full power to withdraw or limit the reference of a bankruptcy case or proceeding to the bankruptcy court at any time for any reason, and *is further required to recall any Marathon issue if requested to do so."* (emphasis added). *Id.* at 699.

The *White Motor* court continued its review of the legislative history which ap-

peared to establish two other major points. First, § 157(d) should be construed narrowly so as not to serve as an escape hatch from bankruptcy court to district court, 42 B.R. at 700, and, second, that withdrawal is only required if the "laws regulating organizations or activities affecting interstate commerce are in fact likely to be considered, and ... such laws are ... material to resolution of the proceeding." *Id. citing* 130 Cong.Rec. S6081 (daily ed. June 19, 1984) (statement of Senator DeConcini).

On the basis of its review of the legislative history, the court held that: "Section 157(d) must therefore be read to require withdrawal not simply whenever non-Code federal statutes will be *considered* but rather only when such consideration is necessary for the *resolution* of a case or proceeding." *Id.* at 703 (emphasis in original). Continuing, the court stated what has come to be known as the *White Motor's* test: "§ 157(d) ... must be read to require withdrawal of the proceedings from the Bankruptcy Court only if this Court can make an affirmative determination that resolution of the claims will require substantial and material consideration of those non-Code statutes." *Id.* at 705.

In *White Motor,* the Pension Benefit Guaranty Corporation had moved to withdraw the reference concerning its ERISA and Internal Revenue Code claims. The court apparently accepted the trustee's position that these and other claims would be determined by reference to the Bankruptcy Code without consideration of ERISA or any other federal statute. *Id.* at 704, 705.

For this Court to grant the motion to withdraw reference based on speculation about ERISA and IRC issues which may or may not arise and may or may not be germane to resolution of core Code proceedings would be inconsistent with the purposes underlying the very existence of the Bankruptcy Court and would encourage forum shopping in a manner Congress disdained when it sought to

---

**4.** It also assumed that "§ 157(d) must be read as a reaction to ... *National Labor Relations Board v. Bildisco and Bildisco,* [465 U.S. 513] 104 S.Ct.

1188 [79 L.Ed.2d 482] (1984)," 42 B.R. at 701, but offered no legislative history or policy reasons to support this assumption.

**1004**

avoid 'creating a multiplicity of forums for the adjudication of part of a bankruptcy case.' *Id.* at 705 quoting 130 Cong.Rec.H. 7492 (daily ed. June 29, 1984) (remarks of Rep. Kastenmeier).

Accordingly, because the proceedings before the bankruptcy court could be resolved without "substantial and material consideration" of a non-Code statute, the court refused to withdraw the reference.

Two other courts have utilized the *White Motor*'s test in cases involving contested non-Code federal law issues.[5] Both courts held that they were bound by § 157(d) to withdraw the reference. *Michigan Milk Producers Association v. Hunter,* 46 B.R. 214 (N.D.Ohio 1985), involved the bankrupt estate of Babcock Dairy Company of Ohio, Inc., a Chapter 7 debtor. As part of a counterclaim against the plaintiff Association, the defendant trustee alleged that the Association had entered into a supply agreement in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Because the Association denied these charges, the court held that it would be necessary to substantially and materially consider the antitrust laws in order to resolve the claim. *Id.* at 216.

*In Re Ilco, Inc.,* 48 B.R. 1016 (N.D.Ala. 1985), involved an adversary claim by the United States against the debtor because of alleged violations of various federal environmental laws. Again, as this claim was contested, the district court held withdrawal to be mandatory because consideration of the government's claim required a detailed examination of explicit federal regulations. *Id.* at 1021, 1022.

But the *White Motor*'s test simply does not go far enough. § 157(d) requires that before there can be mandatory withdrawal, there must be a determination that resolution of the proceeding requires consideration of *both* Title 11 and non-Code federal law. Consideration of the latter without consideration of the former is simply insufficient. Under the facts of *White Motor* the conclusion is implicit that had a substantial and material consideration of one or more non-Code statutes been required the reference would have been withdrawn because resolution of the claims clearly required substantial and material consideration of Title 11. The *White Motor*'s test, however, does not by its terms require consideration of Title 11 and, thus, the *Michigan Milk* and *Ilco* courts, applying that test, withdrew the references even though the contested issue in each case involved substantial and material consideration *only* of non-Code federal law. Nei-

---

**5.** Other courts have considered the meaning of § 157(d). In *In Re Towner Petroleum Co.,* 48 B.R. 182 (Bankr.W.D.Okla.1985), and *In Re Morse Electric Co., Inc.,* 47 B.R. 234 (Bankr.N.D. Ind.1985), bankruptcy judges determined that withdrawal motions must be made in district court. In *Hartley v. Derryberry,* 55 B.R. 781, 782 (Bankr.N.D.Ohio 1985), the bankruptcy judge determined that the bankruptcy court *sua sponte* could order withdrawal of a reference on its own finding that the proceeding requires "substantial and material consideration of non-code federal statutes that regulate organizations or activities affecting interstate commerce." The Courts of Appeal for the Fifth and Eighth Circuits as well as various district courts have considered the permissive withdrawal language of § 157(d). *Holland America Ins. Co. v. Succession of Shepard J. Roy,* 777 F.2d 992 (5th Cir. 1985); *Vreugdenhil v. Hoekstra,* 773 F.2d 213 (8th Cir.1986); *In Re Wisconsin Steel Co.,* 48 B.R. 753 (N.D.Ill.1985); *In Re Continental Airlines Corp.,* 50 B.R. 342, 359, 360 (S.D.Tex.1985); and *In Re Lion Capital Group,* 48 B.R. 329 (S.D.N.Y.1985). *Wooton v. Dep't of Interior,* 52 B.R. 74 (W.D.La.1985), perfunctorily reviewed § 157(d) in granting an unopposed withdrawal motion. *In Re DeLorean Motor Co.,* 49 B.R. 900, 911–913 (E.D.Mich.1985), denied a withdrawal motion because of equitable considerations and did not purport to follow the *White Motor*'s test. In *In Re Maislin Industries,* 50 B.R. 943, 948 (Bankr.E.D.Mich.1985), a bankruptcy judge, acting in accordance with local rules, declined to order withdrawal of a reference after noting that "resolution of [the] proceeding simply does not require substantial and material consideration of both the Bankruptcy Code and the [non-Code federal law]." The only case known to this court purporting to follow the *White Motor* test where withdrawal was not found mandatory is *Tedesco v. Mishkin,* 53 B.R. 120, 123 (S.D. N.Y.1985). The *Tedesco* court found that "[a]lthough plaintiffs allege that the sale of the property *may* implicate other federal laws, this court does not find that considerations of other non-bankruptcy federal statutes are necessary for resolution of the issue" before the bankruptcy court and denied the motion. [emphasis added]

ther court explained how the contested issue required a substantial or material consideration of both Title 11 and non-Title 11 federal law, and there is no reason to delete this requirement from § 157(d). Moreover, there is nothing in *Marathon* which constitutionally or otherwise requires federal law issues to be decided by an Article III court.

Despite the plethora of law review articles attempting to elucidate the meaning of *Marathon,*[6] the confusion surrounding this decision remains. As one bankruptcy judge has written:

> If we could first know where we are, and whither we are tending, we could better judge what to do, and how to do it. We are now far into the [fourth] year since [Marathon] was initiated with the avowed object and confident promise of putting an end to [bankruptcy] agitation. Under the operation of that policy, that agitation has not only not ceased, it will not cease until a crisis shall have been reached and passed. *In Re DeLorean Motor Co.,* 49 B.R. 900, 906 n. 4 (Bankr. E.D.Mich.1985).

The confusion arose in large measure because of the lack of a clear majority opinion. Justice Brennan, writing for a plurality, stated that the Constitution requires Article III adjudication of legal claims, both federal and state, arising in private right actions. *Marathon, supra* at 80–84. Justice Rehnquist's concurrence, however, was limited to the facts presented in *Marathon.* As summarized by Chief Justice Burger in his dissent:

the Court's holding is limited to the proposition stated by Justice Rehnquist in his concurrence in the judgment—that a "traditional" state common-law action, not made subject to a federal rule of decision and related only peripherally to an adjudication of bankruptcy under federal law, must, absent the consent of the litigants, be heard by an "Art. III court" if it is to be heard by any court or agency of the United States.

*Id.* at 92, 102 S.Ct. at 2882.

If Justice Brennan's view had commanded a majority of the Court, there might well be reason to hold that § 157(d) requires Article III adjudication of any proceeding involving non-Code federal law, whether that law required substantial and material consideration or not. But his view did not command a majority of the Court, and I must rely upon what the majority did decide. To the extent there was any doubt, it was removed last session when the Court summarized the holding of *Marathon* in accordance with the statement of that holding as found in the Chief Justice's dissent. *Thomas v. Union Carbide Agricultural Products Co.,* — U.S. ——, 105 S.Ct. 3325, 3334, 3335, 87 L.Ed.2d 409 (1985) ("The Court's holding in [*Marathon*] establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review").[7]

---

6. *See, e.g.,* Countryman, *Scrambling to Define Bankruptcy Jurisdiction: The Chief Justice, The Judicial Conference, and the Legislative Process,* 22 Harv.J. on Legis. 1, 12–19 (1985); Hughes, *The Constitutionality of the Bankruptcy Court and the Ongoing Search for a Principled Distinction Between Article I and Article III Courts: A Re-Evaluation After Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* Syracuse L.Rev. 829, 847–857 (1984) [hereinafter cited as Hughes]; Note, *The Bankruptcy Act of 1984: Marathon Revisited,* 3 Yale L. & Pol.Rev. 231 (1984); Comment, *Bankruptcy Judges: Article III Beckons,* 16 Pac.L.J. 957 (1985). For a discussion of the constitutionality of the 1984 Act in light of *Marathon,* see *In Re Production Steel,* 48 B.R. 841 (M.D.Tenn.1985).

7. I have considered the possibility that Congress accepted Justice Brennan's view in drafting the 1984 Act. However, after carefully reviewing the legislative history, I find continual references to Justice Rehnquist's concurrence and Justice Burger's dissent and a corresponding lack of any reference indicating that Justice Brennan's view was the impetus for the inclusion of the mandatory withdrawal provision. *See generally* Legislative History to Bankruptcy Amendments and Federal Judgeship Act of 1984 *reprinted in* 1984 U.S.Code Cong. & Ad.News 576–606. A determination may one day be made that certain—or all—federal issues require decision by an Article III court, but at this time, with the limited reading given *Marathon* by the Supreme Court itself, this court will not say that

It is against this background that I feel compelled to disagree with the approach taken by the *White Motor* court in viewing § 157(d) as part of the congressional response to *Marathon*. Senate Report No. 55, relied upon in part in *White Motor*, was not issued together with the 1984 bill actually passed by Congress. The bill pending before Congress in 1983 at the time Senate Report No. 55 was issued did not include the core/non-core distinction.[8] This court's review of the legislative history of the 1984 Act convinces it that Congress intended to resolve the problems raised in *Marathon* by the inclusion into the 1984 Act of the core/non-core framework and the mandatory abstention doctrine codified at 28 U.S.C.A. § 1334 (Supp.1985).[9] Indeed, this court has discovered no statement by any member of Congress which supports the conclusion that § 157(d) is to be interpreted as part of the solution to the *Marathon* problem.

Once Congress added the core/non-core distinction to the 1984 Act, the role of the mandatory withdrawal provision cannot be presumed to have remained the same. Non-core proceedings are those cases pursuant to § 157(c) which require *de novo* review by a district court judge. If all *Marathon*-type cases were required to be withdrawn, there would be no purpose in the creation of a non-core type of case which may initially be adjudicated by a bankruptcy judge. Therefore, for yet another reason, *White Motor*'s reliance on Senate Report No. 55 was misplaced.

Once it is established that § 157(d) is not part of the Congressional solution to *Marathon*, it becomes a relatively simple statute to both interpret and apply. § 157(d), by its very terms, permits withdrawal of any

case or proceeding "for cause shown" and mandates withdrawal if the resolution of the proceeding requires consideration of *both* Title 11 and non-Code federal law regulating organizations or activities affecting interstate commerce. "If Congress had intended to mandate withdrawal in every proceeding that involves consideration of the interstate commerce laws, it certainly could have so provided by omitting any reference to Title 11. Nevertheless the reference to Title 11 was included and must be given meaning." *In Re Maislin Industries, U.S. Inc.,* 50 B.R. 943, 947 (Bankr.E.D.Mich.1985), Similarly, the word "resolution" was used requiring that both Title 11 and non-Code federal law consideration be substantial and material and not merely incidental.

One court has noted that in light of the broad interpretation given by the Supreme Court to the term "interstate commerce", it is questionable how that phrase limits the types of references which must be withdrawn. *In Re Towner Petroleum Co.,* 48 B.R. 182, 188 n. 9 (Bankr.W.D.Okla.1985). In this court's view, and in accordance with the narrow construction to be ascribed to § 157(d), mandatory withdrawal should be limited to those cases involving laws in areas in which Congress has found more than a *de minimis* effect on interstate commerce. *See* colloquy between Rep. Kramer and Rep. Kastenmeier at 130 Cong.Rec. H1849–50 (daily ed. March 21, 1984), *reprinted in White Motor, supra* at 700.

■ Thus, in addition to the statutory prerequisite that a motion seeking mandatory withdrawal be timely filed, the moving party must establish that the proceeding

---

all non-Code federal law issues require Article III adjudication.

**8.** For a discussion of the various bills considered and rejected by Congress see Hughes, *supra* note 5, at 858–65.

**9.** Statements by Representative Kastenmeir, 130 Cong.Rec. H7492, June 29, 1984 *reprinted in* U.S.Code Cong. & Ad.News 579, Senator Thurmond, 130 Cong.Rec. S8887, June 29, 1984 *reprinted in* U.S.Code Cong. & Ad.News 581. Sen-

ator Dole, 130 Cong.Rec. S8889, June 29, 1984 *reprinted in* 1984 U.S.Code Cong. & Ad.News 586, 587; Senator Hatch, S8891, June 29, 1984 *reprinted in* 1984 U.S.Code Cong. & Ad.News 590, 591. *See also In Re Lion Capital Group,* 48 B.R. 329, 331 (S.D.N.Y.1985) ("The 1984 Act deals with the *Marathon* problem by distinguishing between 'core' proceedings and claims under Title 11, and 'non-core' proceedings or claims 'related' to Title 11 cases, namely claims arising under traditional state law which must be determined by state law").

 

involves a substantial and material question of both Title 11 and non-Code federal law and that the non-Code federal law has more than a *de minimis* effect on interstate commerce.[10]

■ Withdrawal is required in this case. First, the motion was timely made. Second, the key issue to be adjudicated in this proceeding is whether a PACA trust is part of or separate from Tammaro's estate. Resolving that question is an issue of first impression that will obviously entail material and substantial consideration of both PACA and Title 11 law.[11] Finally, the text of PACA itself establishes that this federal law has more than a *de minimus* effect on interstate commerce.[12]

· The total contested claim in this case is $79,102.70. The bankruptcy judge is ordered to separate out that amount from Tammaro's estate pending a resolution of the claim by this court.

Plaintiff will submit an order in conformance with this opinion.

**10.** One comment by Senator DeConcini cited first in *White Motor, supra* at 700, and discussed in passing in *Michigan Milk, supra* at 215, 216, suggests that it would be appropriate in deciding a mandatory withdrawal motion to consider certain equitable factors such as the relative case loads of the district judge and the bankruptcy judge. The *Michigan Milk* court summarily rejected this suggestion, as do I. § 157(d) is a statute which confers jurisdiction on federal courts and should be narrowly construed in accordance with Congress' intent. In the absence of an express statutory statement by Congress, equitable considerations cannot be the basis of a federal court's jurisdiction.

**11.** The only two published opinions on PACA were written by bankruptcy judges and, while helpful, are not controlling. *See In Re Fresh Approach, Inc.,* 51 B.R. 412 (Bankr.N.D.Tex. 1985); *In Re Fresh Approach, Inc.,* 48 B.R. 926 (Bankr.N.D.Tex.1985). Had the Supreme Court or the Court of Appeals for the Third Circuit determined the status of a PACA trust within a debtor's estate, I would not withdraw the reference as "resolution" of that issue would not require "substantial and material consideration" of non-Code law but merely the application of that binding law to the facts. In similar circumstances, at minimum the presumption should be against mandatory withdrawal.

**12.** § 499e(c)(1) states:

It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, and that such arrangements are contrary to the public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.

The House report clarified that this burden on commerce often involved interstate commerce. In explaining the need for such a law, the Report noted:

Sellers of perishable agricultural commodities are often located thousands of miles from their customers. Sales transactions must be made quickly or they are not made at all. Many sales are consummated while the commodities are en route to a particular destination. Under such conditions, it is often difficult to make credit checks, conditional sales agreements, and take other traditional safeguards. H.R.Rep. No. 3867, 98th Cong., 1st Sess. 3 (1983).