HATZEL & BUEHLER, INC., Plaintiff,

v.

ORANGE & ROCKLAND UTILITIES, INC., Foster Wheeler Constructors, Inc. and Allen–Sherman–Hoff, Co., Defendants.

Civ. A. No. 88–391 LON.

United States District Court, D. Delaware.

Oct. 30, 1989.

James L. Patton, Jr., and Laura Davis Jones of Young, Conaway, Stargatt & Taylor, Wilmington, Del.; Marvin Schechter, and Ronald E. Bogard of Tunstead, Schechter & Torre, New York City, of counsel, for plaintiff.

Peter J. Walsh of Bayard, Handelman & Murdoch, Wilmington, Del.; Eric W. Sleeper and Alan M. Warshauer of Anderson Russell Kill & Olick, and Galef & Jacobs, New York City, of counsel, for defendant, Orange & Rockland Utilities, Inc.

Januar D. Bove, Jr., and Jeffrey B. Bove of Connolly, Bove, Lodge & Hutz, Wilmington, Del.; Eugene Schaffel, and Norman D. Alvy of Buckley, Treacy, Schaffel, Mackey & Abbate, New York City, of counsel for defendant, Foster Wheeler Constructors, Inc.

Henry E. Gallagher, Jr., and Collins J. Seitz, Jr. of Connolly, Bove, Lodge & Hutz, Wilmington, Del.; Walter H. Flamm, Jr., and Katherine McAlice of Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for defendant, Allen–Sherman–Hoff Co.

## OPINION

LONGOBARDI, Chief Judge.

This is a motion by the Defendants Orange and Rockland Utilities, Inc. ("O & R"), Foster Wheeler Constructors, Inc. ("FW") and Allen–Sherman Hoff Company ("ASH") for an order pursuant to 28 U.S.C. § 157(d) withdrawing the reference to the United States Bankruptcy Court for the

District of Delaware (the "Bankruptcy Court") of consolidated adversary proceedings against them filed by the Plaintiff Hatzel & Buehler, Inc. ("H & B").

On October 26, 1987, H & B filed a petition for reorganization under Title 11, Chapter 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware. On March 14, 1988, H & B filed three separate adversary proceedings against O & R, ASH and FW seeking contract or *quantum meruit* damages from the Defendants for wrongfully terminating their respective contract and subcontracts with H & B in connection with electrical work H & B provided at O & R's Lovett Generating Station (the "Lovett Facility") located in Tomkins Cove, New York. H & B's complaint also asserts various tort and contract claims against O & R. At a May 10, 1988, status conference before the Honorable Helen S. Balick, the three adversary proceedings (*Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc., Hatzel & Buehler, Inc. v. Foster Wheeler Constructors, Inc.,* and *Hatzel & Buehler, Inc. v. Allen–Sherman–Hoff Company,* Nos. 88–22, 88–19 and 88–21 respectively) were consolidated because there are common questions of fact and law. On May 2, 9 and 16, 1988, respectively, O & R, ASH and FW each moved for an order to withdraw the reference of the three adversary proceedings to the Bankruptcy Court.

## I. STATEMENT OF FACTS

The controlling facts with respect to the present motion are not in dispute and may be summarized as follows: H & B is a New York corporation with its principal place of business in Wilmington, Delaware. O & R is a New York corporation with its principal place of business at One Blue Hill Plaza, Pearl River, New York. FW has its principal place of business at Perryville Corporate Park, Clinton, New Jersey. ASH is a division of Ecolaire Incorporated, a Pennsylvania corporation having its principal place of business at One Country View Road, Malvery, Pennsylvania.

During 1986, O & R was in the process of reconverting the Lovett Facility from an oil to a coal generating electrical power plant. The coal reconversion of the Lovett Facility required O & R to engage numerous prime contractors, including ASH, FW and H & B. By contract dated April 22, 1986 ("H & B/O & R Contract"), H & B agreed to perform electrical work at the Lovett Facility. The contract was in the amount of $3,038,424.68. Subsequently, in September, 1986, and January, 1987, respectively, H & B entered into subcontracts with ASH and FW to perform electrical work related to ASH's and FW's prime contract work for O & R ("H & B/ASH Subcontract" and "H & B/FW Subcontract" and "Subcontracts").

H & B commenced work on the H & B/O & R Contract in June, 1986, the H & B/ASH Subcontract on September 16, 1986, and the H & B/FW Subcontract on March 1, 1987. In March, 1987, H & B learned that asbestos removal activity was being conducted at the Lovett Facility in alleged violation of Occupational Safety and Health Act ("OSHA") and/or Environmental Protection Agency ("EPA") regulations. On July 3, 1987, H & B notified O & R, ASH and FW that it was removing its employees from the Lovett Facility unless and until the Defendants could guarantee a safe asbestos free work site for H & B and its employees. Thereafter, on July 6, 1987, O & R terminated the H & B/O & R Contract and subsequently ASH and FW terminated their Subcontracts with H & B.

On or about October 26, 1987, H & B filed a petition for reorganization under Title 11, Chapter 11, United States Code in the United States Bankruptcy Court. H & B has since continued to operate its business and manage its property as a debtor-in-possession under sections 1107 and 1108 of the Bankruptcy Code. On March 14, 1988, H & B commenced adversary proceedings against O & R, ASH and FW alleging: (a) the Bankruptcy Court has jurisdiction over the subject matter of the adversary proceedings under 28 U.S.C. §§ 1334 and 157(a); and (b) these adversary proceedings are "core" proceedings under 28 U.S.C. § 157(b)(2).

The underlying dispute presented by H & B regarding the Contract relates to a claim that H & B was not provided with a safe work site because of asbestos at the Lovett Facility. The Complaint which sets forth sixteen causes of action is essentially a breach of contract action by H & B against O & R under New York state law.[1] The first four causes of action are directly for breach of contract. For example, H & B alleges that O & R, ASH and FW wrongfully terminated their contracts. H & B further alleges that O & R, ASH and FW breached and abandoned their contracts. The fifth cause of action is for *quantum meruit*. The sixth cause of action alleges that O & R fraudulently induced H & B's entry into the Contract. The seventh cause of action alleges that O & R concealed information relating to asbestos. The eighth and ninth causes of action allege negligence and gross negligence on the part of O & R. The tenth and eleventh causes of action allege violations of sections 200 and 241 of the New York Labor Law. The twelfth cause of action is for a declaration reforming the Contract and enforcement of the Contract as reformed. The thirteenth and fourteenth causes of action are for tortious interference with the ASH and FW subcontracts. The fifteenth cause of action is for implied indemnification. The sixteenth cause of action is for contribution. H & B has requested more than $100,000,000 in consequential and punitive damages.

The Defendants assert that this Court is required to withdraw the adversary proceedings pursuant to 28 U.S.C. § 157(d). H & B contends, on the other hand, that the adversary proceedings should be characterized as a "core proceeding" under 28 U.S.C. § 157(c)(1) and, therefore, are not subject to the mandatory withdrawal provisions of section 157(d).

## II.  STATUTORY FRAMEWORK

In *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court invalidated the jurisdictional provision of the 1978 Bankruptcy Act under which Congress granted Article I Bankruptcy Judges the power to decide certain state law civil actions over "all proceedings arising under Title 11 or arising in or related to Title 11." Pub.L. 95–598, 92 Stat. 2687. The Court held that the "constitutional system of checks and balances is designed to guard against [the] 'encroachment or aggrandizement' " of the functions that have traditionally been performed by Article III Judges. 458 U.S. at 83–84, 102 S.Ct. at 2878. Although it acknowledged that Article III courts are not required for the adjudication of all federal questions, the court was not willing to permit Congress to circumvent Article III by allowing Article I Judges to decide all cases when those cases merely relate to bankruptcy proceedings, unless there was a "limiting principle." *Id.* at 76, 87, 102 S.Ct. at 2874, 2880.

In response to this decision, Congress adopted the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, §§ 114, 121(d), 98 Stat. 333. Under the 1984 Act, 28 U.S.C. § 1334, now provides:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

The statutory mechanism by which bankruptcy cases and other civil proceedings may be referred to the Bankruptcy Court is provided in 28 U.S.C. §§ 157–158. Section 157(a) states that: "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising

---

**1.** It is not disputed that the adversary proceedings involve rights created by state and non-Bankruptcy Code law arising independent of and antecedent to the filing of the bankruptcy petition and that, but for H & B's fortuitous filing of its petition, would have been brought in a District Court or state court.

under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Pursuant to this section, this Court routinely refers bankruptcy cases within the District of Delaware to the Bankruptcy Court.

Section 157 also divides cases heard by the Bankruptcy Court into "core" and "non-core" bankruptcy proceedings and defines the parameters of Bankruptcy Court jurisdiction to hear and adjudicate such referred cases and proceedings. Title 28, section 157(b)(1) of the United States Code provides that:

> Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

A non-inclusive list of "core" proceedings arising under Title 11 is set forth at 28 U.S.C. § 157(b)(2) which specifies, *inter alia,* matters concerning the administration of the estate:

> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate....; * * * (E) orders to turn over property of the estate; (F) proceedings to determine, avoid, or recover preferences; (G) motions to terminate, annul or modify the automatic stay; * * * (I) determinations as to the dischargeability of particular debts; * * * (K) determinations of the validity, extent, or priority of liens; [and] * * * (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security-holder relationship....

A "non-core" proceeding is defined in 28 U.S.C. § 157(c)(1) as a "proceeding that is not a core proceeding but that is otherwise related to a case under title 11." In accordance with the instruction in *Marathon* that there must be a "limiting principle" governing the delegation of authority to Bankruptcy Judges over cases merely "related to" bankruptcy petitions in non-core proceedings:

> ... the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1). Under this new jurisdictional framework, the process of referral occurs under the supervision and control of the District Court. *See, e.g., United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).

### III. MANDATORY WITHDRAWAL

■ Title 28, section 157(d) of the United States Code permits the District Court to withdraw its reference of a bankruptcy petition or any case or proceeding relating to the petition:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

The first sentence of section 157(d) provides for permissive withdrawal of a case or proceeding for "cause." The second sentence, however, requires, on timely application of a party, the withdrawal of a case or proceeding if resolution of that action necessitates consideration of Title 11 and non-Bankruptcy Code law which affects interstate commerce. The meaning of this mandatory withdrawal provision has been the subject of debate among District Courts which have considered the issue. The seminal case on this issue is *In re White Motor Corp.,* 42 B.R. 693 (N.D.Ohio 1984), in which the District Court carefully and thoroughly analyzed the legislative history of the mandatory withdrawal provision and concluded that section 157(d) did not apply simply whenever non-bankruptcy

issues were considered. Noting that Congress did not wish section 157(d) to become "an escape hatch through which most bankruptcy matters will be removed to the district court", the court reasoned that consideration of federal laws affecting interstate commerce required more than a *de minimus* consideration to invoke the mandatory withdrawal provision." *Id.* at 704. Thus, the court held that withdrawal is mandatory "only when" consideration of non-Bankruptcy Code law "is necessary for the *resolution* of a case or proceeding" and that "substantial and material consideration" of those non-bankruptcy statutes must be involved to resolve the proceeding. *Id.* The competing theory suggests that the terms of the statute should be literally interpreted and mandatory withdrawal should be required when resolution of a proceeding requires consideration of *both* Title 11 and non-Bankruptcy Code law. *See In re Anthony Tammaro, Inc.*, 56 B.R. 999, 1004 (D.N.J.1986). The latter theory, however, has not been adopted by subsequent courts addressing the issue largely because such a strict interpretation of the law "would effectively defeat the attempts of the Code to rationalize bankruptcy litigation." *In re Johns–Manville Corp.*, 63 B.R. 600, 602 (S.D.N.Y.1986); *see Boricua Motors Corp. v. Tamachi, Inc.*, 76 B.R. 891 (D.P.R.1987); *In re Baldwin–United Corp.*, 57 B.R. 751, 757 (S.D.Ohio 1985); *United States v. ILCO, Inc.*, 48 B.R. 1016, 1021–22 (N.D.Ala.1985); *see also Burger King Corp. v. B–K Of Kansas, Inc.*, 64 B.R. 728, 731 (D.Kan.1986). As the court in *Johns–Manville Corp.* stated:

> It would seem incompatible with congressional intent to provide a rational structure for the assertion of bankruptcy claims to withdraw each case involving the straightforward application of a federal statute to a particular set of facts. It is issues requiring significant *interpretation* of federal laws that Congress would have intended to have decided by a district judge rather than by a bankruptcy judge.

*Johns–Manville Corp.*, 63 B.R. at 602. Because the interpretation of section 157(d) set forth in *White Motor Corp.* has been followed by all but one District Court and because the reasoning of those decisions appears more compelling, this Court will follow that standard.

■ In this case, resolution of the underlying adversary proceedings requires substantial and material consideration of non-Bankruptcy Code laws regulating interstate commerce. Clearly, the OSHA statute and its regulations are rooted in the commerce clause and are the type of laws that Congress intended to have decided by Article III Judges when it enacted the mandatory withdrawal provision. 28 U.S.C. § 651. For example, in *Johns–Manville Corp.*, the court held that the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") "is a statute 'rooted in the commerce clause' and is precisely 'the type of law Congress had in mind when it enacted the statutory withdrawal provision.'" *Johns–Manville Corp.*, 63 B.R. at 602; *ILCO*, 48 B.R. at 1021–22 (Resolution of complaint based upon allegations of violations of the Clean Water Act ("CWA"), Resource Conservation and Recovery Act ("RCRA") and CERCLA required mandatory withdrawal); *In re Combustion Equipment Associates, Inc.*, 67 B.R. 709 (S.D.N.Y.1986); *see also In re Hartley*, 55 B.R. 781, 784 (N.D.Ohio 1985) ("The Trustee's allegation that the Defendant violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") makes it a necessity that the Court determine whether the Defendant's activities were those prohibited by 18 U.S.C. §§ 1961–1968. There is no question this case is the type provided for by the second sentence of § 157(d) which requires mandatory withdrawal by the District Court."). These cases demonstrate that proceedings filed in Bankruptcy Courts which involve issues requiring interpretation of non-Bankruptcy Code law are the type of cases which Congress intended section 157(d) to apply.

Plaintiff argues, on the other hand, that the adversary proceedings simply seek to recover money due under the contracts with O & R, ASH and FW as a result of their alleged wrongful termination of the

contracts. Plaintiff is also seeking various "garden-variety" tort damages, indemnification and contribution for the Defendants' failure to maintain a safe asbestos free work site. Plaintiff, however, does not contend that resolution of the adversary proceedings will not require substantial and material consideration of the regulations applicable to OSHA. Instead, Plaintiff contends that OSHA and EPA regulations do not provide H & B with a private cause of action and the Bankruptcy Court will not have to consider whether Third–Party Defendants Cummins Insulation Company and Biscraft Power Cleaning Systems should be fined for violations of OSHA laws and regulations.

This argument is simply not relevant. Section 157(d) does not require mandatory withdrawal only when a non-Bankruptcy Code law provides for a private cause of action.[2] Instead, the analysis employed to determine if the adversary proceeding should be mandatorily withdrawn is whether resolution of the proceeding would involve substantial and material consideration of non-Bankruptcy Code law. *See White Motor Corp.*, 42 B.R. at 704.

In the present case, H & B has alleged several violations of OSHA and EPA regulations as well as "other [unspecified] environmental and asbestos laws and regulations" as the basis for its Complaint. Specifically, paragraphs 22 and 23 of the Complaint will require substantial and material consideration of the regulations applicable to OSHA, including 29 C.F.R. § 1910.1 *et seq.*, 29 C.F.R. § 1926 *et seq.* and 29 C.F.R. § 1990.101 *et seq.* These regulations address the occupational and health standards that H & B alleges were violated by the Defendants and which resulted in H & B's removal of its employees from the Lovett Facility. For H & B to succeed on its state contract and tort law claims, it must prove that its removal of its employees

from the Lovett Facility was justified by showing that the Defendants violated the applicable OSHA and/or EPA violations. Thus, in order to determine whether the Defendants' termination of the contract and subcontracts was not wrongful, this Court must necessarily interpret the OSHA and EPA regulations and other implicated, though yet unspecified, environmental regulations. Since the violations of these regulations form the basis of H & B's cause of action under state contract and tort law, resolution of the consolidated adversary proceedings necessarily requires substantial and material consideration of laws affecting interstate commerce. Thus, the Court finds that mandatory withdrawal of the adversary proceedings is required under 28 U.S.C. § 157(d).[3]

## IV. PERMISSIVE WITHDRAWAL

Even if the mandatory provision did not apply, the Court would exercise its discretion under the permissive withdrawal provision under section 157(d) and withdraw the reference of the consolidated adversary proceedings to the Bankruptcy Court. Permissive withdrawal for "cause" includes considerations of the nature of the proceeding (*i.e.*, core or non-core proceeding) and judicial economy. *Acolyte Elec. Corp. v. City of New York*, 69 B.R. 155, 166 (E.D.N.Y.1986). The adversary proceedings in this case constitute a "non-core proceeding" as that term is used in 28 U.S.C. § 157(b)(2) because the state contract and tort claims do not involve any interpretation of the Bankruptcy Code and are not otherwise related to the underlying bankruptcy proceeding pending before the Bankruptcy Court. Although H & B contends that its claim is a "core proceeding" under 28 U.S.C. § 157(b)(2) which directly affects the administration of H & B's estate, this argument hinges upon the tenuous connection that the proceeds of the instant litigation will form the basis of

---

**2.** For example, *see Boricua Motors,* 76 B.R. at 892; *see also Michigan Milk Producers Ass'n v. Hunter,* 46 B.R. 214, 216 (N.D.Ohio 1985).

**3.** It should be noted that the consolidated adversary proceeding constitutes a "proceeding" within a bankruptcy "case" as used in 28 U.S.C.

§ 1334(a). *See In re Anthony Tammaro, Inc.,* 56 B.R. at 1001 n. 2. Therefore, it is proper to withdraw the consolidated adversary proceeding while leaving the original reference of the bankruptcy petition to the Bankruptcy Court. *Burger King Corp.,* 64 B.R. at 732.

distribution to the general creditor body. H & B's contract and torts claims do not involve a "core proceeding" because of the contingent nature of the litigation concerning the adversary proceedings. *See, e.g., Matter of Baldwin–United Corp.*, 48 B.R. 49, 53 (S.D.Ohio 1985) (Complaint seeking turnover of a matured obligation owed debtor is a "core-proceeding" since the obligation is non-contingent.). Although recovery of proceeds from the contested litigation may result in the ultimate distribution of a portion of the money damages to the creditors, resolution of the adversary proceedings in the Defendants' favor would not benefit the estate. *Acolyte Elec. Corp.*, 69 B.R. at 173. Moreover, "[t]o be a core proceeding, an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment although of necessity there may be a peripheral state law involvement." *Id.* Since H & B's Complaint is based on state contract and tort claims involving alleged violations of OSHA and/or EPA laws and regulations independent of the underlying bankruptcy litigation currently pending in the Bankruptcy Court, it is clearly a non-core proceeding under 28 U.S.C. § 157(b)(1).

In addition, considerations of judicial economy favor the permissive withdrawal of the consolidated adversary proceedings. Because the consolidated adversary proceedings involve a non-core proceeding, the Bankruptcy Judge could not enter a final judgment in the matter unless the parties consented. Thus, if the request for withdrawal were denied, then, in light of the present motion, this Court would most likely have to review the OSHA and/or EPA regulations while considering the Bankruptcy Court's proposed findings of fact and conclusions of law. 28 U.S.C. § 157(c)(1). Thus, permissive withdrawal of the consolidated adversary proceedings is also appropriate in light of considerations of judicial economy. *In re Leedy Mortg. Co., Inc.*, 62 B.R. 303, 306 (E.D.Pa. 1986); *In re Enviro–Scope Corp.*, 57 B.R. 1005 (E.D.Pa.1985); *see also ILCO*, 48 B.R. at 1022.

## V.  CONCLUSION

The Court concludes that the consolidated adversary proceedings must be withdrawn from the Bankruptcy Court under 28 U.S.C. § 157(d) because resolution of the litigation requires substantial and material consideration of non-Bankruptcy Code regulations affecting interstate commerce. Alternatively, the Court concludes that it would exercise its discretion to withdraw the adversary proceedings under the permissive withdrawal provision of 28 U.S.C. § 157(d).