In the Matter of DELAWARE & HUD-SON RAILWAY CO., Debtor.

Timothy MELLON, et al., Plaintiffs,

v.

DELAWARE & HUDSON RAILWAY CO., Defendant.

RAILSTAR CONTROL TECHNOLOGY, Plaintiff,

v.

DELAWARE & HUDSON RAILWAY CO., Defendant.

U.S. SPRINT COMMUNICATIONS CO., et al., Plaintiffs,

v.

DELAWARE & HUDSON RAILWAY CO., Defendant.

GUILFORD TRANSPORTATION, et al., Plaintiffs,

v.

DELAWARE & HUDSON RAILWAY CO., Defendant.

TRANSPORTATION DISPLAYS, et al., Plaintiffs,

v.

DELAWARE & HUDSON RAILWAY CO., Defendant.

MELLON BANK, N.A., et al., Plaintiffs,

v.

DELAWARE & HUDSON RAILWAY CO., Defendant.

GUILFORD TRANSPORTATION, et al., Plaintiffs,

v.

DELAWARE & HUDSON RAILWAY CO., Defendant.

GUILFORD TRANSPORTATION, et al., Plaintiffs,

v.

DELAWARE & HUDSON RAILWAY CO., Defendant.

Bankruptcy No. 88–342.

Civ. A. Nos. 90–507–JJF to 90–514–JJF.

Adv. Nos. 90–70, 90–73, 90–71, 90–68, 90–69, 90–67, 90–35 and 90–31.

United States District Court, D. Delaware.

Jan. 10, 1991.

Mark Minuti and Jeffrey S. Goddess of Saul Ewing Remick & Saul, Wilmington, Del., for certain plaintiffs.

Palmer L. Whisenant of Morris Nichols Arsht & Tunnell, Wilmington, Del., for plaintiff Mellon Bank in Civil Action 90–512.

Somers S. Price, Jr. of Potter Anderson & Corroon, Wilmington, Del., for plaintiff U.S. Sprint in Civil Action 90–509.

Richard G. Elliott, Jr. of Richards Layton & Finger, Wilmington, Del., for defendant Delaware & Hudson Ry. Co.

Eduard F. von Wettberg, III of Morris James Hitchens & Williams, Wilmington, Del., Stanley J. Samorajczyk, Hazel & Thomas, Washington, D.C., for Trustee of the Delaware & Hudson Ry. Co.

## OPINION

FARNAN, District Judge.

### I. PROCEDURAL AND FACTUAL HISTORY

The Delaware and Hudson Railway Company ("Delaware & Hudson") is a wholly owned subsidiary of Guilford Transportation Industries, Inc. ("Guilford"). On June 20, 1988, Delaware & Hudson filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code. Pursuant to 28 U.S.C. § 157(a), the bankruptcy case was referred from the United States District Court for the District of Delaware to the United States Bankruptcy Court for the District of Delaware ("the Bankruptcy Court").[1]

On June 27, 1988, Francis P. DiCello was appointed "Trustee" of the Delaware & Hudson. Approximately two years later, the Trustee initiated ten adversary proceedings against Guilford; certain Guilford subsidiaries[2]; and present and former Guilford shareholders, officers and directors, Timothy Mellon ("Mellon"), David Fink ("Fink"), and Robert Anestis ("Anestis"), who also served as directors and officers of the Delaware & Hudson prior to its filing of bankruptcy. Guilford, its subsidiaries and Mellon and Fink are collectively referred to as "the Guilford defendants." Several other corporations not affiliated with Guilford were also named as defendants.[3]

On August 3, 1990, the Guilford defendants filed a Motion pursuant to 28 U.S.C. § 157(d) for the permissive withdrawal of reference of eight of the ten adversary proceedings to the Bankruptcy Court, which motion the Trustee opposes. The Motion for Withdrawal of Reference is presently before the Court.

### II. ISSUES

The Guilford defendants contend that the reference of Adversary Proceeding No. 90–70 ("the D & O lawsuit") to the Bankruptcy Court should be withdrawn pursuant to 28 U.S.C. § 157(d) which allows permissive withdrawal by the district court of any case or proceeding "for cause shown." The Guilford defendants contend that permissive withdrawal is appropriate because the D & O lawsuit is a non-core matter in

---

1. Referral of Title 11 proceedings from the United States District Court for the District of Delaware to the United States Bankruptcy Court for the District of Delaware is automatic pursuant to a Standing Order of Reference dated July 23, 1984.

2. Boston and Maine Corporation ("B & M"), Maine Central Railroad Company ("MEC"), Hudson River Estates, Inc. ("HRE"), Delaware River Estates, Inc. ("DRE"), and Railstar Control Technologies, Inc. ("Railstar").

3. Mellon Bank, N.A., Mellon Financial Services Corporation No. 3, Transportation Displays, Inc., U.S. Sprint Communications Company Limited Partnership, and U.S. Telecom, Inc.

which the defendants have a right to a jury trial, which cannot be conducted in bankruptcy court. The defendants further contend that the seven companion cases should be withdrawn as well because of judicial economy concerns.

The Trustee, on the other hand, argues that a Motion to Withdraw Reference to the Bankruptcy Court is premature and contends that such an action should await the bankruptcy court's finding whether the lawsuit is core or non-core. The Trustee contends that the D & O lawsuit is core, and that the bankruptcy court may conduct jury trials in core cases, and thus argues there is no "cause" for withdrawal of reference. In addition, the Trustee contends that the seven companion lawsuits are clearly core matters which should be decided by the Bankruptcy Court, particularly since there is a presumption against the withdrawal of reference of core matters.

### III. DISCUSSION

#### A. *Core v. Non–Core*

■ Under 28 U.S.C. § 157(b)(1), "[b]ankruptcy judges may hear and determine all cases under Title 11 and all core proceedings arising under Title 11, or arising in a case under Title 11." The bankruptcy judge's authority to *decide* all matters is subject to appellate review by the district court under 28 U.S.C. § 158.

#### 1. *Core Proceedings*

The term "core" is not defined in the statute. However, the Court of Appeals for the Third Circuit has stated: " 'a proceeding is core under section 157 if it invokes a substantive right provided by [T]itle 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.' " *Beard v. Braunstein,* 914 F.2d 434, 444 (3d Cir.1990) (quoting *Matter of Wood,* 825 F.2d 90 (5th Cir. 1987)). In addition, 28 U.S.C. § 157 provides a non-exclusive list of core proceedings, such as "matters concerning the administration of the estate," "orders to turn over property of the estate," "proceedings to determine, avoid, or recover preferences," "proceedings to determine, avoid, or recover fraudulent conveyances," "determinations of the validity, extent, or pri-

ority of liens," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship."

Cases in this District have elaborated on the definition of a core proceeding by stating that " '[t]o be a core proceeding, an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment although of necessity there may be a peripheral state law involvement.' " *Hatzel & Buehler, Inc. v. Orange & Rockland Utilities,* 107 B.R. 34, 40 (1989) [hereinafter *Orange & Rockland*] (quoting *Acolyte Elec. Corp.,* 69 B.R. 155, 173 (E.D.N.Y.1986)).

#### 2. *Non–Core Proceedings*

As to non-core proceedings, 28 U.S.C. § 157(c)(1) provides:

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under Title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

A bankruptcy judge's function regarding non-core matters is similar to that of a magistrate. As courts in this District have noted, "obviously, whether a proceeding is deemed to be 'core' or 'non-core' is crucial to bankruptcy litigants because the bankruptcy court's proposed findings in a non-core proceeding will be subject to *de novo* review by the district court, whereas the bankruptcy court makes a final determination in core proceedings." *Hatzel & Buehler v. Central Hudson Gas & Electric,* 106 B.R. 367 (D.Del.1989) [hereinafter *Central Hudson* ].

#### 3. *The Determination of Core or Non–Core Status*

There is some dispute as to whether the bankruptcy court or the district court makes the determination of whether the

proceeding is core or non-core. Title 28 U.S.C. § 157(b)(3) provides:

*The bankruptcy judge* shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under Title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law.

(Emphasis added).

The plaintiff, the Trustee of the Delaware and Hudson Railway Company, argues that § 157(b)(3) requires that the bankruptcy judge determine whether a case is core or non-core *before* the district court decides whether to withdraw reference to the bankruptcy court under § 157(d).

The defendants, on the other hand, contend that § 157(b)(3) must be read in conjunction with Bankruptcy Rule 5011 which states that motions for withdrawal of reference in bankruptcy proceedings shall be heard exclusively by a district judge. The defendants argue that ceding to the bankruptcy court a portion of the withdrawal decision, i.e., whether the proceeding is core or non-core, "is flatly inconsistent with Rule 5011." [4] The defendants attempt to explain the purpose of § 157(b)(3) by stating that it is to "require that the bankruptcy court identify in advance the scope of the bankruptcy court's authority to hear and determine the proceeding, and the scope of appellate review." They further contend that "[n]othing in § 157(b) suggests a further purpose to limit the authority of a district judge to decide a motion to withdraw." [5]

Two cases in this District have considered the issue. In *Central Hudson,* the Court determined that the motion to withdraw reference from the bankruptcy court was premature because neither party had asked the bankruptcy judge to determine whether the proceeding was core or non-core. The Court stated, "[w]hether this

proceeding is core or non-core is a determination which may appropriately be made, in the first instance, by the bankruptcy court, not the district court." *Central Hudson,* 106 B.R. at 369–70. The Court further stated that "even if 'cause' for withdrawal exists in all non-core proceedings, Central Hudson must look first to the bankruptcy court to make this determination. Otherwise § 157(b)(3) would be circumvented." *Id.* at 370.

In *Orange & Rockland,* the Court did not directly address the issue, but the Court, in making its decision to withdraw reference, stated that "[p]ermissive withdrawal for 'cause' includes considerations of the nature of the proceeding (*i.e.,* core or non-core proceeding)." 107 B.R. at 39. Thus, in *Orange & Rockland,* the district court itself made the decision whether the proceeding was core or non-core. *See id.*

The Court concludes that 28 U.S.C. § 157(b)(3) requires the bankruptcy judge to determine whether a proceeding is core or non-core. Longstanding principles of statutory construction require that an unambiguous statute be read according to its plain and unambiguous language, which in the instant case requires the conclusion that the bankruptcy judge determine whether matters are core or non-core. *See Adams Fruit Co. v. Barrett,* — U.S. —, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990) ("As a general rule of statutory construction, where the terms of the statute are unambiguous, judicial inquiry is complete."); *see also Smith v. Fidelity Consumer Discount Co.,* 898 F.2d 907 (3d Cir.1990). In addition, § 157(d) can be read consistently with Bankruptcy Rule 5011, which states that withdrawal of reference motions shall be heard exclusively by the district court. Contrary to defendants' assertion, such a procedure is not a cumbersome two step process because withdrawal of reference to the bankruptcy court is a two step process to begin with, and it is difficult to understand how it is cumbersome for the bankruptcy judge, well versed in bankruptcy law, to make the core/non-core determination prior to the withdrawal of reference

---

**4.** Reply in Support of Certain Defendants' Motions to Withdraw Reference of these Proceedings to the Bankruptcy Court ("Reply Brief"), at 3.

**5.** *Id.*

motion being heard by the district court. Thus, the Court concludes that before a withdrawal of reference motion is presented to the District Court, the bankruptcy judge must make the determination of whether proceedings are core or non-core.

Although in the future this Court will adhere to the principle that the bankruptcy court must make the determination of core/non-core status before a withdrawal of reference motion is presented, the Court will in this case resolve the core/non-core issue.

### B. *Mandatory v. Permissive Withdrawal*

Title 28, U.S.C. § 157(d) states:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so. withdraw a proceeding if the court determines that resolution of the pro-ceeding requires consideration of both Title 11 and other laws of the U.S. regulating organizations or activities affecting interstate commerce.

Section 157 provides two standards for withdrawal. When "cause" is shown, the statute allows permissive withdrawal. When "resolution of the proceeding requires consideration of both Title 11 and other laws of the U.S. regulating organizations or activities affecting interstate commerce," mandatory withdrawal applies. However, neither "cause" nor the terms of the mandatory provision are defined or explained in the statute.

### 1. *Mandatory Withdrawal*

The second sentence of 28 U.S.C. § 157(d) pertains to mandatory withdrawal. There are two theories with regard to which types of cases necessitate mandatory withdrawal. In *Orange & Rockland*, the Court followed *In Re White Motor Corp.*, 42 B.R. 693 (N.D.Ohio 1984), in which the

Court held that withdrawal is mandatory "only when" consideration of non-Bankruptcy Code law "is necessary for the *resolution* of a case or proceeding" and that "substantial and material consideration" of those non-bankruptcy statutes must be involved to resolve the proceeding. *Orange & Rockland*, 107 B.R. at 38 (emphasis added). "Noting that Congress did not wish § 157(d) to become 'an escape hatch through which most bankruptcy matters will be removed to the district court,' the *White Motor* court reasoned that consideration of federal laws affecting interstate commerce required more than a *de minimis* consideration to invoke the mandatory withdrawal provision." *Id.* at 38 (quoting *White Motor*, 42 B.R. at 704).[6]

### 2. *Permissive Withdrawal*

In the case of a permissive withdrawal, the district court may withdraw any proceeding "for cause shown." 28 U.S.C. § 157(d). Although "for cause shown" is not defined by the statute, in a recent case the Court of Appeals for the Third Circuit adopted an approach suggested by the Court of Appeals for the Fifth Circuit:

> 'The district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process.'

*In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990) (quoting *Holland America Insurance Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir.1985)); *accord Central Hudson*, 106 B.R. at 371.

In *Orange & Rockland*, the Court stated that "permissive withdrawal for 'cause' includes considerations of the nature of the proceeding (*i.e.*, core or non-core proceedings) and judicial economy." 107 B.R. at 39 (citing *Acolyte Electric*, 69 B.R. at 166).

---

**6.** The Court in *Orange & Rockland* rejected the competing theory on mandatory withdrawal, accepted by the District of New Jersey, which provides that "the terms of the statute should be literally interpreted and mandatory withdrawal should be required when resolution of a proceeding requires consideration of *both* Title 11 and non-Bankruptcy Code law." *Orange &*

*Rockland*, 107 B.R. at 38 (citing *In Re Anthony Tammaro, Inc.*, 56 B.R. 999, 1004 (D.N.J.1986)). This theory has not been adopted by most courts because "such a strict interpretation of the law 'would effectively defeat the attempts of the Code to rationalize bankruptcy litigation.'" *Id.* (quoting *In Re Johns–Manville Corp.*, 63 B.R. 600, 602 (S.D.N.Y.1986)).

The Court, in *Central Hudson,* stated that "[t]he 'cause shown' requirement in § 157(d) creates a 'presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy.'" *Central Hudson,* 106 B.R. at 371 (quoting *Allard v. Benjamin (In Re DeLorean Co.),* 49 B.R. 900, 912 (Bankr.E.D.Mich.1985)).

### C. *The D & O Lawsuit*

[4] The Court will address the issue of core/non-core status first as it pertains to the D & O lawsuit, Adversary Proceeding No. 90–70. In that case, the Trustee claims damages against the defendant shareholders/directors for declaration of unlawful dividends pursuant to New York and Delaware statutes; waste pursuant to New York statute; and breach of fiduciary duty.

#### 1. *Core v. Non–Core*

Both parties agree that if the D & O lawsuit involves only state law claims which existed prior to the filing of bankruptcy, and which *could* have been brought whether or not bankruptcy was filed, it is a non-core proceeding.

While the Trustee concedes that the D & O lawsuit involves only state law claims, he argues that the claims against the director defendants in the D & O lawsuit could not have been brought before the Trustee was appointed and investigated the transactions at issue. Thus, the Trustee submits that the D & O lawsuit is a core proceeding.

Defendants argue that whether the lawsuit would have realistically been brought is irrelevant. As long as the D & O lawsuit *could* have been brought prior to the bankruptcy, it does not matter whether there was a realistic chance of it actually having been filed. In support of this contention, defendants argue that there were persons other than the Trustee who had standing and the ability to bring suit against the directors for breach of fiduciary duty prior to the filing of bankruptcy. For instance, defendants maintain that other directors who were not named as defendants could have brought the action. Defendants conclude that the test for non-core status has been satisfied because the Trustee concedes that the D & O lawsuit involves only state law claims, and the lawsuit against the directors could have been brought without the filing of the bankruptcy.

Even though the Trustee concedes that the D & O claims are state law claims only, the Trustee argues that the counts in the D & O lawsuit "track the fraudulent conveyance counts (but not the many other counts)" in the seven other adversary proceedings.[7] The Trustee uses a test referred to in *Harley Hotels, Inc. v. Rain's International Ltd.,* 57 B.R. 773, 780 (M.D. Pa.1985), which provides that if, as here, "the claim is 'intimately connected with the property of the estate,' then it may be a core proceeding despite the fact that its resolution would require an adjudication based on state law."[8] Further, the Trustee contends that the D & O lawsuit is core because it fits within the catch-all provisions of 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(O).[9]

The defendants, on the other hand, argue that such a broad reading of the catch-all provisions runs afoul of the Supreme Court's decision in *Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in

---

**7.** The six other adversary proceedings are namely the Hudson River Estates, Inc. ("HRE"), Delaware River Estates, Inc. ("DRE"), Mellon Bank N.A. ("Mellon BanK"), Guilford Transportation Industries, Inc. ("Guilford"), Transportation Displays, Inc. ("TDI") and US Telecom, Inc. ("US Telecom") suits. Brief in Opposition to Certain Defendants' Motions to Withdraw Reference of These Proceedings to the Bankruptcy Court ("Brief in Opposition"), at 15.

**8.** Brief in Opposition, at 15. In *Harley,* the court referred to the above-mentioned test as one of the many tests that courts over the years have used to determine core status. However,

the *Harley* court did not use this test. It used a "nexus" test: "If there is a sufficient 'nexus between the proceeding involving a state law cause of action and the bankruptcy estate,' then the proceeding may be considered 'core.'" *Harley,* 57 B.R. at 780 (quoting *In Re: Lion Capital Group,* 46 B.R. 850, 856 (Bankr.S.D.N.Y.1985)).

**9.** Section 157(b)(2)(A) states that core proceedings include "matters concerning the administration of the estate"; and section 157(b)(2)(O) states that core proceedings include "other proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship."

which the Supreme Court held that the broad grant of jurisdiction to bankruptcy judges in the 1978 Reform Act violated Article III of the Constitution. In *Marathon,* the Supreme Court distinguished between "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power," and "the adjudication of state-created private rights, such as the right to recover contract damages." 458 U.S. at 71, 102 S.Ct. at 2871. The Court held that the adjudication of state-created private rights is constitutionally reserved to Article III judges. *Id.* at 87, 102 S.Ct. at 2880.

The Trustee responds that defendants' interpretation, that the D & O lawsuit is non-core even though it arguably fits within the two catch-all provisions, would "render the general provisions null." *See In Re Ben Cooper,* 896 F.2d 1394 (2d Cir. 1990). The Trustee contends that such a reading by defendants ignores the fact that Congress, in enacting § 157 in response to *Marathon,* was attempting to legislate bankruptcy jurisdiction "as broadly as possible within the Constitutional constraints of *Marathon." See Ben Cooper,* 896 F.2d at 1398.

However, defendants point to *Orange & Rockland* which states:

Although [Hatzel & Buehler] contends that its claim is a "core proceeding" under 28 U.S.C. § 157(b)(2) which directly affects the administration of [Hatzel & Buehler]'s estate, *this argument hinges upon the tenuous connection that the proceeds of the instant litigation will form the basis of distribution to the general creditor body. [Hatzel & Buehler]'s contract and torts claims do not involve a "core proceeding" because of the contingent nature of the litigation concerning the adversary proceedings.*

*Orange & Rockland Utilities,* 107 B.R. at 39–40 (emphasis added) (referring to *Mat-*

*ter of Baldwin—United Corp.,* 48 B.R. 49, 53 (S.D.Ohio 1985) (when the relief sought is the turnover of a matured obligation owed to the debtor, it is a core proceeding since the obligation is non-contingent)).

The Court in *Orange & Rockland* goes on to further state that "[a]lthough recovery of proceeds from the contested litigation may result in the ultimate distribution of a portion of the money damages to the creditors, resolution of the adversary proceedings in the Defendants' favor would not benefit the estate." *Id.* at 40 (citing *Acolyte Electric Corp.,* 69 B.R. at 173).

In *Beard* the Court of Appeals for the Third Circuit quoting from *Collier on Bankruptcy* stated:

The categorization of 'orders to turn over property of the estate' as core proceedings has misled some courts into expanding bankruptcy court jurisdiction beyond that permissible under *Marathon.* For example, it has been held that an action on matured promissory notes given pursuant to a stock purchase plan is a turnover proceeding under section 542 and is therefore a core proceeding. Similarly, an action to recover retentions on a construction contract has been held to be a turnover proceeding. *The problem with these cases is that, under their rationale, every action brought by a trustee or debtor in possession to recover money or property could conceivably be characterized as a turnover proceeding, effectively eradicating Marathon.*

914 F.2d at 444 (quoting 1 Collier on Bankruptcy ¶ 3.01[2][b][iii] at 3–42–43 (15th ed. 1989)).

The state law claims at issue in the D & O lawsuit existed prior to and independent of the filing of the instant bankruptcy, and the Court concludes that under these circumstances the D & O lawsuit is a non-core proceeding, and thus subject to permissive withdrawal under 28 U.S.C. § 157(d).[10]  If

---

**10.** In their effort to have the Court withdraw reference of the seven other adversary proceedings to the Bankruptcy Court, defendants also assert that they have a right to a jury trial on the issues presented in the D & O suit, which right the Trustee concedes. In *Beard,* the United States Court of Appeals for the Third Circuit held that bankruptcy courts may not conduct jury trials in non-core matters. 914 F.2d at 443.

The Court of Appeals for the Third Circuit has not addressed the issue of the right of the bankruptcy court to conduct jury trials in core matters. The issue was before the United States Supreme Court in the case of *In Re Ben Cooper,* 896 F.2d 1394 (2d. Cir.1990), in which the United States Court of Appeals for the Second Circuit permitted the bankruptcy court to conduct a jury trial in a core matter. *See* —— U.S. ——,

admittedly state law claims such as those underlying the D & O lawsuit were classified as "core" proceedings based upon the connection, as argued by the Trustee, that the proceeds of the action will become part of the sum to be distributed to creditors of the bankrupt debtor, the teachings of the U.S. Supreme Court in *Marathon* would be effectively eradicated. *Every* proceeding could be characterized as a core proceeding, because every recovery has some effect on the size of the bankrupt's estate. This is obviously contrary to what Congress intended when it statutorily distinguished between core and non-core proceedings. Thus, defendants' Motion for Withdrawal of Reference to the Bankruptcy Court for Adversary Proceeding No. 90–70 will be granted.

D. *Seven Companion Lawsuits*

1. *Core v. Non–Core*

█ In the seven companion cases to the D & O lawsuit, the Trustee contends that the relief being sought is principally the turnover of property of the estate under 11 U.S.C. § 542; the avoidance and recovery of fraudulent conveyances under §§ 544(b), 548, and 550; the avoidance and recovery of preferences under §§ 547 and 550; and declaratory judgments pursuant to Bankruptcy Rule 7001(9). The Trustee argues that "[a]ll of these claims are classic 'core' proceedings expressly described in 28 U.S.C. § 157 which go to the heart of the bankruptcy court's ability to administer the [Delaware and Hudson] estate."[11]

Defendants, on the other hand, contend that these lawsuits are non-core because in actuality they are claims resting on state law, and the Bankruptcy Code simply authorizes the bankruptcy court to use state law to decide such matters.[12] The Trustee

counters by arguing that the seven lawsuits do not "involve predominantly state law claims.... [T]hey are standard core proceedings aimed at retrieving estate assets."[13]

The Court of Appeals for the Third Circuit has accepted the Fifth Circuit's definition of a core proceeding which provides that "a proceeding is core under § 157 if it invokes a substantive right provided by Title 11, or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Beard,* 914 F.2d at 444 (quoting *Matter of Wood,* 825 F.2d 90, 97 (5th Cir.1987)). The proceeding at issue in *Wood* was held to be non-core because it was "simply a state contract action that, had there been no bankruptcy, could have proceeded in state court." *Wood,* 825 F.2d at 97. Similarly in *Beard,* the Third Circuit held that the action, involving pre-petition contracts allegedly breached both before and after the filing of bankruptcy, was entirely non-core because it was a "garden variety contract claim" and was not "against the bankruptcy estate." *Id.*

Since the seven companion cases to the D & O lawsuit go to the heart of this bankruptcy, i.e., the retrieval of assets, the Court concludes that the seven cases are core proceedings. Despite the fact that pursuant to the bankruptcy code the bankruptcy court may use state law to resolve such matters, the Court is persuaded that the contemplated proceedings, by their nature, arose strictly from the instant bankruptcy and therefore must be considered "core" proceedings under 28 U.S.C. § 157.

2. *Judicial Economy*

█ Defendants contend that even if the seven companion proceedings are core,

---

110 S.Ct. 3269, 111 L.Ed.2d 779 (1990). However, the Supreme Court recently remanded the case to the Court of Appeals for the Second Circuit so that the Court of Appeals could address a jurisdictional issue recently raised. *In re Ben Cooper,* —— U.S. ——, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990).

**11.** Brief in Opposition, at 20.

**12.** For example, the Trustee challenges fraudulent conveyances pursuant to Title 11 §§ 544(b)

and 548, the U.S. Bankruptcy Code. However, the defendants point out that "§ 544(b) simply authorizes the [T]rustee to use state-law remedies and a review of the complaints filed by the [T]rustee reveals that he relies primarily on the state law remedies because most of the challenged transactions fall outside the one year limitations period for fraudulent conveyance and preference actions under to [sic] the Bankruptcy Code." Reply Brief, at 12 n. 8.

**13.** Brief in Opposition, at 26.

they nonetheless should be withdrawn from the bankruptcy court along with the D & O lawsuit, because judicial economy is a sufficient cause for permissive withdrawal whether the case is core or non-core. See *In Re Enviroscope Corp.*, 57 B.R. 1005 (E.D.Pa.1985); *In Re Leedy Mortgage Co.*, 62 B.R. 303 (E.D.Pa.1986). In *Enviroscope*, the Court stated:

A district court is not foreclosed from withdrawing a reference to a bankruptcy court because a matter is found to be a core proceeding.... [A] district court is given broad discretion in determining whether to withdraw a matter from the bankruptcy court.

*Enviroscope*, 57 B.R. at 1008.

As support for their argument that judicial economy counsels withdrawal of the remaining seven proceedings, defendants assert that all eight cases (the D & O lawsuit plus the seven companion cases) contain "identical legal and factual issues involving the relationship between the Delaware & Hudson and Guilford or Guilford subsidiaries." Further, defendants point out that the Trustee advances the same legal theory in every case, which is that the cash goods and services advanced to the Delaware & Hudson from its affiliates were capital contributions, rather than debt.[14]

In response, the Trustee asserts that the remaining seven lawsuits contain numerous other issues and claims not found in the D & O lawsuit, and that the common issue, whether the Delaware & Hudson was insolvent or undercapitalized when the assets were transferred or obligations incurred, requires the analysis of separate discreet advances. In addition, the Trustee contends that the judicial economy arguments have to be weighed against the "cause shown" standard for permissive withdrawal.

The Trustee also argues that while 28 U.S.C. § 157 is silent as to "cause shown," defendants' position ignores the *DeLorean* presumption which states that Congress intended to have bankruptcy proceedings adjudicated in the bankruptcy court unless rebutted by a contravening policy. *DeLorean*, 49 B.R. at 912.

The second argument advanced by defendants for withdrawing the seven remaining cases is the convenience of third party witnesses, especially with regard to discovery matters. The Trustee asserts that discovery can be facilitated by permitting the eight lawsuits to remain in the Bankruptcy Court until all discovery is completed and trials are ready to proceed. The Trustee also points out that withdrawal of all eight proceedings to the district court is a false economy because the bankruptcy judge must still address various proofs of claim in the continuing bankruptcy action.

The defendants counter that withdrawal of all eight proceedings will avoid conflicting decisions by the bankruptcy court and the district court in any jury trials that may be required.[15]

The defendants' final argument for withdrawing all eight cases to the district court is that consolidation can only occur in the district court, first of all, because of the defendants' right to a jury trial in the D & O lawsuit, and secondly, because of the likelihood of appeal if non-core issues are tried in the bankruptcy court.

In considering the parties' arguments with regard to the most efficient method of managing the eight proceedings, the Court concludes that economies can be achieved by the adoption of either approach, since the Court is persuaded that subsequent problems could arise whether the remaining seven cases are withdrawn or left with the Bankruptcy Court.

The Court concludes that defendants' judicial economy arguments are insufficient to rebut the *DeLorean* presumption (i.e., Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy) since judicial economy could be achieved in either forum. Therefore, the adjudication

---

14. Memorandum in Support, at 19–20.

15. However, defendants do not want collateral estoppel on issues tried in the bankruptcy court

to bind the defendants in the D & O lawsuit if it is held in district court, because they state that this would dilute the defendants' right to a jury trial.

of the seven companion core proceedings will remain with the Bankruptcy Court.

 As to the D & O lawsuit, the Court finds the approach taken by the court in *In re Wedtech Corporation*, 94 B.R. 293 (S.D. N.Y.1988), helpful. In *Wedtech*, the Court was asked to withdraw reference to the bankruptcy court of an action in which the plaintiff essentially conceded that the defendant was entitled to a jury trial. *Id.* at 296. In *Wedtech*, as here, the bankruptcy judge had participated extensively in proceedings related to the case and was consequently very familiar with the case. *Id.* at 295.

Under the circumstances, the *Wedtech* Court decided not to withdraw the reference immediately, and exercised its discretion by stating that "[t]he reference will not extend ... beyond the point where the matter is ready for trial or dispositive motions, if that eventuality should occur." *Id.* The Court noted that it occasionally referred both jury and non-jury matters to magistrates for pre-trial supervision under 28 U.S.C. § 636. *Id.* at 296. The Court concluded that bankruptcy judges can serve basically the same function as magistrates in non-core proceedings. *Id.*

In this case, the Court is persuaded that defendants' right to a jury trial in the non-core D & O lawsuit will not be adversely affected by having the bankruptcy court supervise pretrial matters, including discovery, with the contemplated jury trial conducted in the district court. *See id.* The Court's view is that withdrawing the reference of the D & O lawsuit at the pretrial stage, while the seven companion core proceedings remain with the bankruptcy court, would be a waste of judicial resources, and in fact, in this case as in *Wedtech*, the "[Bankruptcy Judge's] expressed familiarity with the present action, as well as the factual overlap with the numerous cases before [her], present a unique and compelling opportunity to promote judicial economy and swift resolution." *Id.*

## IV. CONCLUSION

For the reasons discussed, the Court concludes that the D & O lawsuit is a non-core proceeding that should be permissively withdrawn just prior to trial while the remaining seven companion lawsuits are core proceedings that should not be withdrawn. Therefore, the Court will grant defendants' Motion to Withdraw Reference of the D & O lawsuit to the Bankruptcy Court, but not until such time as the case is ready for trial or case dispositive motions arise, and deny defendants' Motion to Withdraw Reference of the remaining seven cases.

An appropriate Order will be entered.