In re CENTENNIAL COAL, INC., Centennial Resources, Inc., CR Mining Company and B–Four, Inc., Debtors.

Rebecca Son, as Liquidating Agent of the Estates of the Above–Captioned Reorganized Debtors and Successor in this Adversary Proceeding to the Official Committee of Unsecured Creditors, Assignee of the Debtors' Rights to Pursue this Bankruptcy Action, Plaintiff,

v.

Coal Equity, Inc., Defendant.

Bankruptcy Nos. 98–2316(PJW) to 98–2319(PJW). Adversary No. A–00–1655.

United States Bankruptcy Court, D. Delaware.

March 22, 2002.

Stephen M. Miller, Christina M. Maycen, Morris, James, Hitchens & Williams, LLP, Wilmington, DE, for Coal Equity, Inc.

J. Gregory Troutman, Morris, Garlove, Waterman & Johnson, PLLC, Louisville, KY, of counsel.

Robert J. Stearn, Jr., Christopher D. Loizides, Richards, Layton & Finger, P.A., Wilmington, DE, for plaintiff.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

Before the court is the motion (Doc. # 12) of Coal Equity, Inc. ("Coal Equity" or "Defendant") for a determination that this adversary proceeding is non-core. I will grant the motion for the reasons discussed below.

## BACKGROUND

Centennial Coal, Inc. and certain of its affiliates (collectively, "Debtors" or "Centennial") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on October 13, 1998 ("Petition Date").[1] Prior to the Petition Date, in December 1995, Pyramid Mining, Inc. ("Pyramid"), predecessor to Centennial, and Coal Network, Inc. ("Coal Network"), predecessor in interest to Coal Equity, entered into a coal marketing and sales agreement ("Sales Agreement") pursuant to which Pyramid agreed to supply and deliver coal, sold by Coal Network, to Louisville Gas &

Electric Company ("LG & E"), a generator and supplier of electric power. (Def.'s Mot. (Doc. # 12) ¶ 4; Sales Agreement at 1.) At the time the Sales Agreement was executed, Coal Equity was an independent coal marketing and sales agent who had entered into an agreement ("LG & E Contract") to supply LG & E with certain specified quantities and qualities of coal ("Coal"). (Def.'s Mot. (Doc. # 12) ¶ 4.) Pursuant to the terms of the Sales Agreement, Coal Equity later engaged Centennial to supply the Coal necessary to fulfill Coal Equity's obligations to LG & E under the LG & E Contract. (*Id.* at ¶ 5.)

In April 1997, LG & F informed Coal Equity that it would be withholding payment on certain invoices for coal shipments for the months of March and April. (*Id.* at ¶ 6.) As grounds therefor, LG & E asserted that Coal Equity was in default of the LG & E Contract due to its failure to deliver certain specified qualities of coal. (*Id.*) Thereafter, LG & E withheld payment from Coal Equity and obtained replacement coal at a higher cost from an alternative supplier. (*Id.*) As a result, Coal Equity then withheld payment on certain invoices ("Unpaid Invoiced") from Centennial pursuant to § 7.4 of the Sales Agreement.[2] (Def.'s Mot. (Doc. # 12) ¶ 6.)

---

1. Debtors' chapter 11 cases are being administered jointly. On October 16, 2000, Debtors' Second Amended Joint Plan of Reorganization was confirmed by Order (Doc. # 715, Case No. 98–2316) of this Court.

2. Section 7.4 of the Sales Agreement provides:

    *Withholding.* LG & E, under the [LG & E Contract] with [Coal Equity], shall have the right to withhold from payment of any billing or billings the amount of any sums which LG & E is not able in good faith to verify or which LG & E otherwise in good faith disputes, such right to withhold to continue for the duration of the dispute or inability to verify. [Coal Equity] shall noti-

fy [Centennial] promptly in writing of any such issue, stating the basis of LG & E's claim and the amount LG & E intends to withhold. [Centennial] and [Coal Equity] agree to review the matter in detail within ten (10) working days after [Centennial's] receipt of such notice. In the event [Coal Equity], [Centennial], along with LG & E (herein "the Parties") are not able promptly to agree to a resolution, the matter shall be resolved under the Dispute provisions of this Agreement. In the event and to the extent that any dispute or verification issue is resolved in [Centennial's] favor, [Centennial] shall add the unpaid amount to the next invoice, plus interest at the prime rate of borrowed funds charged by Manufactur-

Subsequently, on October 12, 2000, the Official Committee of Unsecured Creditors ("Committee") commenced the instant adversary proceeding against Defendant seeking to compel turnover of funds for the Unpaid Invoices to the debtors' estate ("Estate") pursuant to 11 U.S.C. §§ 542 [3], and to recover property pursuant to 11 U.S.C. § 550 [4][5].

On March 2, 2001, Defendant responded to the Committee's complaint ("Complaint") by arguing that: (1) no sums were owed to Centennial by virtue of certain pre-petitions offsets which arise from Centennial's alleged breach of contract, and (2) any and all sums alleged in the Complaint are actually owed by, and in the possession of, LG & E. (*Id.* at ¶ 8.) [6] Thereafter, on September 6, 2001, Defendant filed the instant motion (Doc. # 12) seeking a determination that this proceeding is non-core. [7]

## DISCUSSION

Defendant argues that the instant adversary proceeding is non-core because the claims asserted herein arose pre-petition and constitute a traditional state law cause of action that could have been commenced outside of Debtors' bankruptcy. (Def.'s Mot. (Doc. # 12) ¶¶ 16–19.) I agree. Although the Committee argues that this

---

ers Hanover Bank, as published in the most recently available Wall Street Journal for the period between the date on which the amount would normally be paid and the actual invoice date, and [Coal Equity] shall pay such extra amount in accordance with the procedures hereof. In the event and to the extent that any dispute or verification issue is resolved in LG & E's favor, [Centennial] shall promptly issue a credit memorandum to [Coal Equity] covering the *amount in question.*

Payment by [Coal Equity], whether knowing or inadvertent, or [sic] any amount in dispute shall not be deemed a waiver of any claims or rights by [Coal Equity] or by LG & E with respect to any disputed amounts or payments made.

(Sales Agreement at § 7.4.)

3. 11 U.S.C. § 542 provides in pertinent part:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

4. 11 U.S.C. § 550 provides, in pertinent part:

Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b) or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property ...

5. On October 3, 2000, this Court entered an Order (Doc. # 704, Case No. 98–2316) in Debtors' main bankruptcy case assigning to the Committee the right to pursue bankruptcy actions on behalf of Debtors' Estate.

6. In its answer to the Complaint, Defendant also demands a jury trial, states that it has not filed a proof of claim in Debtors' bankruptcy, and contends that the district court's reference should be withdrawn with respect to this proceeding.

7. Defendant simultaneously filed a motion ("Reference Motion") (Doc. # 12) to withdraw the reference of the proceeding to this Court. Pursuant to Fed.Bankr.R. 5011, that motion is to be decided by the District Court. In addition, Defendant has reserved its right to seek: (a) transfer of venue of this proceeding pursuant to 28 U.S.C. §§ 1404, 1412, and/or (b) abstention from this proceeding pursuant to 28 U.S.C. § 1334(c). (Def.'s Mot. (Doc. # 12) ¶ 10, n. 2.)

action constitutes a core proceeding pursuant to 28 U.S.C. § 157(b) [8], I find this argument unpersuasive.[9]

■■ Section 157(b)(2) sets forth a nonexclusive list of core-proceedings.[10] In the Third Circuit, a proceeding is considered to be core under § 157 "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Torkelsen v. Maggio (In re Guild and Gallery Plus, Inc.)*, 72 F.3d 1171, 1178 (3d Cir.1996) (quoting *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 267 (3d Cir.1991)). A proceeding is not "core" simply because it "arguably fits within the literal wording" of one of the listed proceedings under § 157(b)(2). *In re Lacy*, 183 B.R. 890, 893 (Bankr.D.Colo.1995). Rather, to be a core proceeding, "an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment although of necessity there may be peripheral state law involvement." *Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc.*, 107 B.R. 34, 39 (D.Del. 1989) (quoting *Acolyte Elec. Corp. v. City of New York*, 69 B.R. 155, 173 (Bankr. E.D.N.Y.1986)). As the Fifth Circuit stated in *In re Wood*, 825 F.2d 90 (5th Cir. 1987),

> [i]f the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

*Id.* at 97, *quoted in Torkelsen*, 72 F.3d at 1178. Such is the case here.[11]

■■ The instant proceeding neither invokes a substantive right provided by title 11, nor constitutes a proceeding which

---

**8.** 28 U.S.C. §§ 101 *et seq.* is hereinafter referred to as "§ ___".

**9.** The Committee responds to Defendant's motion by arguing that the issue of whether this matter constitutes a core or non-core proceeding is moot because the Committee does not oppose Defendant's Reference Motion. (Pl.'s Resp. (Doc. # 19) at 1.) The Committee argues that, assuming that the District Court withdraws the reference, the core/non-core dispute becomes moot because the District Court, unlike this Court, can make final and binding decisions in both core and non-core matters. (*Id.* at. 1–2.) The Committee then goes on to state that nothing in its response constitutes an admission or concession that the issues involved in this matter are non-core. (*Id.* at 2.) The law in this District suggests otherwise. "[B]efore a withdrawal of reference motion is presented to the District Court, the bankruptcy judge must make the determination of whether proceedings are core or non-core." *Mellon v. Delaware & Hudson Ry. Co. (In re Delaware & Hudson Ry. Co.)*, 122 B.R. 887, 892 (D.Del.1991); *see also Hatzel & Buehler, Inc. v. Central Hudson Gas & Elec.*, 106 B.R. 367, 369–70 (D.Del.1989)

(finding motion to withdraw the reference to the bankruptcy court to be premature because neither party had asked the bankruptcy judge to determine whether the proceeding was core or non-core).

**10.** In the Complaint, the Committee merely asserts that this proceeding is core pursuant to § 157(b) without referring to a particular subsection. (Complaint ¶ 2.) Presumably, the Committee contends that the proceeding is core pursuant to § 157(b)(2)(E) which provides:

> (2) Core proceedings include, but are not limited to—
> (E) orders to turn over property of the estate;

**11.** The Third Circuit has specifically defined non-core proceeding as those in which the outcome " 'could conceivably have any effect on the estate being administered in bankruptcy' ". *Marcus Hook*, 943 F.2d at 264 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)); *In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 757 (D.N.J.1996).

could only arise in the context of a bankruptcy case. *See Torkelsen*, 72 F.3d at 1178. The claims asserted herein arose pre-petition in connection to Defendant's alleged breach of the Sales Agreement. As such, a ruling on this action depends solely on an interpretation of state law and not on an interpretation of Debtors' rights under the Bankruptcy Code. The Committee mislabels this action as one for turnover of property of the estate pursuant to 11 U.S.C. § 542, or for the recovery of property pursuant to 11 U.S.C. § 550. This proceeding does not flow from or implicate Debtors' rights and/or obligations as a chapter 11 debtor. Rather, because there is a dispute as to whether Defendant owes any amount to Debtors under the Sales Agreement, this proceeding constitutes nothing more than a traditional state law cause of action that exists independently of Debtors' bankruptcy. Therefore, I find that although this proceeding is related to Debtors' bankruptcy because of its potential effect on the estate, *see Marcus Hook*, 943 F.2d at 264, it does not constitute a core proceeding pursuant to § 157(b). *See Matter of United States Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir.1997) ("Core proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law, normally state law."); *Beard v. Braunstein*, 914 F.2d 434, 443 (3d Cir. 1990) ("It is clear that to the extent that the claim is for pre-petition contract damages, it is non-core"); *Donington*, 194 B.R. at 758 (finding proceeding to be non-core "because the state contract and tort claims do not involve any interpretation of the Bankruptcy Code and are not otherwise related to the underlying bankruptcy proceeding"); *Mellon*, 122 B.R. at 894 (finding

state law claims which existed prior to and independent of the filing of debtor's bankruptcy to be non-core); *Hatzel*, 107 B.R. at 39 (finding proceeding to be non-core "because the state contract and tort claims do not involve any interpretation of the Bankruptcy Code and are not otherwise related to the underlying bankruptcy proceeding").

## CONCLUSION

For the reasons stated above, Defendant's motion (Doc. # 12) for a determination that this proceeding is non-core is granted.