In re SPECIAL METALS CORPORA-TION, Inco Alloys International, d/b/a Huntington Alloys, Special Metals Domestic Sales Corp., and A–1 Wire Tech, Inc., Debtors.

Century Indemnity Company, Plaintiff,

v.

Special Metals Corporation, Defendant.

Bankruptcy Nos. 02–10335 to 02–10338.

Adversary No. 03–1025.

United States Bankruptcy Court,
E.D. Kentucky,
Ashland Division.

Sept. 29, 2004.

---

Gregory R. Schaaf, Lexington, KY, for defendant.

W. Thomas Bunch, II, Lexington, KY, Leonard P. Goldberger, Philadelphia, PA, for plaintiff.

## MEMORANDUM OPINION

This matter is before the court on the defendant Debtors' Motion for Judgment on the Pleadings. The Plaintiff has filed a Response and the Debtors have filed a Reply. While only Special Metals Corporation is named in the caption of this proceeding as defendant, the Plaintiff's Complaint and Amended Complaint for Declaratory Judgment identify all the Debtors as defendants and they will be collectively referred to herein as "the Debtors." This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b). The Plaintiff has alleged that this is a non-core proceeding pursuant to 28 U.S.C. § 157(c), and it has not consented to the entry of final orders or judgments by this court. As set out below, however, this is a core proceeding. Further, having reviewed the record and the pleadings and having considered the arguments of counsel, the court will grant judgment on the pleadings to the Debtors.

### 1. *Procedural history*

The Debtors filed their jointly administered Chapter 11 cases on March 27, 2002. They filed their Second Amended Joint Plan of Reorganization Dated August 7, 2003 ("the Plan"), and their Second Amended Disclosure Statement Dated August 7, 2003 ("the Disclosure Statement") which was approved by order entered on August 11, 2003. The Order Confirming the Plan ("the Confirmation Order") was entered on September 29, 2003.

The Plaintiff and other insurers of the Debtors ("the Insurers") objected to the Disclosure Statement and the Plan, specifically Article 9.9 of the Plan which provides:

> The discharge and release of the Debtors as provided in this Plan shall not diminish or impair the enforceability of any Insurance Policies that may cover Claims against any Debtor or any other Person. The Debtors will continue to comply with their non-monetary duties and obligations under the Insurance Policies. The Insurers will continue to be responsible for Insurance Claims, including, without limitation, future claims, in accordance with the terms of the Insurance Policies and the requirements of state and other applicable law, notwithstanding the discharge and release of the Debtors' monetary obligations which may otherwise be required under the Insurance Policies. Any claim of the Insurers against the Debtors for retrospective premiums, self-insured retentions, deductible payments, or any other monetary obligations with respect to Insurance Policies issued prior to the Filing Date or with respect to coverage of Insurance Claims shall constitute Class 6A general unsecured claims if otherwise Allowed.

Plan Art. 9.9. The Insurers reserved their objections to the Plan by insisting that the Debtors include the following provision in the Disclosure Statement:

> It is the Insurers' contention that to the extent that the Plan is not insurance neutral, the Plan, if confirmed, may cause the Insurance Policies to be breached and otherwise void any coverage available under such Insurance Policies. As the Insurers do not believe that the Plan, as drafted, is insurance neutral, the Insurers have reserved all of their rights and their remedies including, but not limited to, commencing a declaratory judgment action to decide the coverage issues in a court of competent jurisdiction—either in state or federal district court—as the Insurers contend that these coverage issues are non-

core issues and not subject to this Court's jurisdiction.

Disclosure Statement at 74–75.

Each of the Insurers filed an objection to the Plan. The Plaintiff's specific objection was that the Debtors' treatment of the insurance policies in the Plan voided otherwise available insurance coverage. In its Objections of Century Indemnity Company to Confirmation of Debtors' Second Amended Joint Plan of Reorganization Dated August 7, 2003 ("Plaintiff's Objection") the Plaintiff alleged that the Plan was not feasible because its treatment of the insurance policies would void any otherwise available insurance coverage, and because the proposed releases and injunctions contained in the Plan would materially impair its contractual rights.

As set out above, the Plan was confirmed by order entered on September 29, 2003. The Plaintiff and the other Insurers filed an appeal from the Confirmation Order on October 7, 2003. The Plan became effective on November 26, 2003. On December 15, 2003, the Debtors filed their Motion to Dismiss the Appeal because substantial consummation of the Plan rendered the appeal moot. The Insurers filed a response. The District Court dismissed the appeal as moot in *Century Indemn. Co., et al. v. Special Metals Corp., et al.,* No. 03–207 (E.D.Ky. March 9, 2004).

The Plaintiff filed this proceeding on September 28, 2003, the day before the entry of the Confirmation Order. The proceeding was stayed by agreement during the pendency of the appeal. Following dismissal of the appeal, the Plaintiff filed an Amended Complaint on May 18, 2004, and the Debtors filed an Amended Answer on June 2, 2004. The Debtors filed their Motion for Judgment on the Pleadings on July 2, 2004.

*2. Standard for judgment on the pleadings*

A motion for judgment on the pleadings is made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, made applicable herein by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, which allows a party to so move after the pleadings are closed. A motion for judgment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion to dismiss. *United States v. Wood,* 925 F.2d 1580, 1581 (7th Cir.1991). The court is generally not to look beyond the pleadings, but may consider documents incorporated by reference into the pleadings, even if those documents are not attached to the pleadings. *Id.* at 1582.

Further,

[j]udgment on the pleadings will be granted only if the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.... In making this determination, all well-plead factual allegations in the complaint must be taken as true and all inferences must be drawn in the light most favorable to the non-moving party ..., but unsupported or sweeping legal conclusions are not accepted[.] The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support its claims.

*Roberson v. Cityscape Corp., et al. (In re Roberson),* 262 B.R. 312, 318 (Bankr.E.D.Pa.2001)(internal quotations and citations omitted).

As numerous judicial opinions make clear, a Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of

the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the district court will take judicial notice.

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed.2004).

### 3. Discussion

#### A. Res judicata

■■■■ The Debtors contend that the relief requested by the Plaintiff in this proceeding has been previously determined by this court by its confirmation of the Plan, including Article 9.9 dealing with insurance coverage. The court's decision was upheld on appeal. In support of their contention the Debtors cite § 1141(a) of the Bankruptcy Code which provides in pertinent part that "the provisions of a confirmed plan bind the debtor . . . and any creditor . . . [of] the debtor, whether or not the claim or interest of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan." 11 U.S.C. § 1141(a). The law in the Sixth Circuit is that "confirmation of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and res judicata principles bar re-litigation of any issues raised or that could have been raised in the confirmation proceedings." *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.),* 930 F.2d 458, 463 (6th Cir. 1991).

The Debtors point out that the Plan addressed the treatment of the Insurers, including the Plaintiff, that the Plaintiff objected to its treatment under the Plan, and that this court overruled the Plaintiff's objections and confirmed the Plan. On appeal, the District Court held that the success of the Plan would be affected if it granted the relief sought by the Insurers. *See Century Indemn. Co., et al. v. Special Metals Corp., et al.,* No. 03–207, slip op. at 17. In dismissing the appeals, the District Court observed that the Insurers had the opportunity before the bankruptcy court to object to the Plan and "its specific provisions they did not like." *Id.* at 17–18. The District Court found that the Insurers' objections were without merit. *Id.* at 18.

The Plaintiff argues that the relief it seeks in this proceeding is not precluded by the Confirmation Order because the issues raised here are not the same as those raised in its Objections. It further maintains that these issues could not have been litigated in the context of the confirmation hearing. Finally, it argues that its Objections were never finally determined on the merits, and that it reserved this cause of action in its Objections, in the Disclosure Statement and at the Confirmation Hearing. The Plaintiff therefore concludes that res judicata is not applicable to this proceeding. This court does not agree.

The prayer for relief of Plaintiff's Amended Complaint states that it seeks a declaration from this court that:

(i) Defendants have anticipatorily breached the Century Policies by seeking to repudiate their post-Effective Date reciprocal monetary obligations under the Century Policies;

(ii) Century will be prejudiced, and will suffer actual and substantial pecuniary damage, by Defendants' material anticipatory breaches of the Century Policies;

(iii) Defendants' anticipatory breaches of the Century Policies have excused Century of any further obligations to defend or indemnify Defendants and/or the Reorganized Debtors with respect to any Insurance Claims and/or to provide any further insurance coverage or performance under the Century Policies;

The Plaintiff's contention that these issues are not the same as those raised in its Objection notwithstanding, they have been litigated between the parties in the plan confirmation process. This court has already determined that

> [t]he Insurers will continue to be responsible for Insurance Claims, including, without limitation, future claims, in accordance with the terms of the Insurance Policies and the requirements of state and other applicable law, notwithstanding the discharge and release of the Debtors' monetary obligations which may otherwise be required under the Insurance Policies.

*Confirmation Order,* at 20. The Insurers were unsuccessful on appeal, and the Plaintiff is precluded from re-litigating these issues.

 Whether a proceeding is barred by the res judicata effect of an order confirming a Chapter 11 plan is determined by the application of the following four-part test:

1. A final decision on the merits in the first action by a court of competent jurisdiction;
2. The second action involves the same parties, or their privies, as the first action;
3. The second action raises an issue actually litigated or which should have been litigated in the first action;
4. An identity of causes of action.

*Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.,* 973 F.2d 474, 480 (6th Cir. 1992). As discussed above, the Confirmation Order was a final decision on the merits, and the appeal of that order was unsuccessful. The same parties are before the court in this proceeding, and, as set out above, it raises an issue litigated during the plan confirmation process. In regard to the fourth element, it is satisfied if "the claims arose out of the same transaction or series of transactions," or if the "claims arose out of the same core of operative facts." *Browning v. Levy,* 283 F.3d 761, 764 (6th Cir.2002)(internal quotation and citation omitted).

The Plaintiff's claim herein is based on the Debtors' Chapter 11 Plan and its effect on the insurance coverage provided by the Plaintiff. In the plan confirmation process, the court determined that the Plan would not impair the enforceability of the Insurance Policies, and that the Plaintiff and the other Insurers would continue to be responsible for Insurance Claims while the Debtors' monetary obligations were discharged and released. The question the Plaintiff attempts to characterize as "different" arises out of the same set of facts as those before the court in the plan confirmation process. The court therefore concludes that all four elements are satisfied here, and res judicata precludes the court's consideration of the Plaintiff's claim for relief.

### B. *Core nature of the proceeding*

 The Plaintiff has alleged that this is not a core proceeding in which this court may enter a final judgment. It contends that because the pre-petition insurance contracts arise under state law, any dispute in regard to these contracts is a state law matter that is non-core. The Bankruptcy Code does not define "core" or "non-core." A non-exhaustive list of core proceedings in set forth in § 157(b)(2) of title 28.

The question of whether a matter is core or non-core has been determined by the courts on a case-by-case basis. In *Hughes–Bechtol, Inc. v. Construction Mgmt., Inc.,* 144 B.R. 755 (S.D.Ohio 1992), the court adopted a four-part test as the "consensus of the courts" to determine that a matter is non-core:

> 1) It is not specifically identified as a core proceeding under § 157(b)(2)(B) through (N);

2) The cause of action existed prior to the filing of the bankruptcy petition;

3) The cause of action would continue to exist independent of the provisions of title 11; and

4) The parties' rights, obligations, or both, are not significantly affected as a result of the filing of the bankruptcy petition.

*Id.* at 757 (internal quotations and citations omitted). The Debtors contend that this proceeding does not meet the criteria set out above for classification as a non-core matter.

This court has determined that the issues raised by the Plaintiff have already been litigated in the plan confirmation process, and this matter may properly be considered a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). As concerns whether the proceeding being specifically identified as a core proceeding under § 157(b)(2)(B) through (N) is dispositive of the core/non-core issue, however, the court tends to agree with the court in *Son v. Coal Equity, Inc. (In re Centennial Coal, Inc.)*, 278 B.R. 54 (Bankr.D.Del.2002):

A proceeding is not 'core' simply because it arguably fits within the literal wording of one of the listed proceedings under § 157(b)(2).... Rather, to be a core proceeding, an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment although of necessity there may be a peripheral state law involvement.

*Id.* at 57 (internal quotations and citations omitted).

■ In analyzing the characteristics of the matter, this court agrees with the Debtors' position because the dispute between the Plaintiff and the Debtors is based on the Plaintiff's treatment in the Debtor's Plan. More specifically, this matter did not exist prior to the Debtors' filing of their petition, and could not exist outside the bankruptcy context. As pointed out by the Debtors, the Sixth Circuit has held that a dispute that could not exist outside the bankruptcy context and that involves issues which arose during the bankruptcy proceedings is a core proceeding. *See Michigan Employment Sec. Comm'n. v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co., Inc.)*, 930 F.2d 1132, 1144–45 (6th Cir.1991). Further, the parties' rights and obligations were significantly affected by the filing of the Debtors' Chapter 11 petition as their relationship and dealings with each other and with potential insurance claimants were no longer defined and governed only by state law but by the relevant provisions of the Bankruptcy Code and ultimately the confirmed Plan.

This court therefore holds that this matter is a core proceeding in which it may enter final orders and judgments, and it will enter a judgment on the pleadings in favor of the Debtors.